UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION
In Admiralty

TROY D. DWYER, derivatively on
Behalf of Quinby Allie, LLC and
Bella Sky, LLC,

and                                                            Civil No: 4:21-cv-37

TROY D. DWYER, individually,

     Plaintiffs,

v.

L.D. AMORY AND COMPANY, INCORPORATED, et. al.

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND COMPLAINT

Plaintiffs, Troy D. Dwyer ("Dwyer"), both individually and derivatively on behalf of Quinby Allie, LLC and Bella Sky, LLC (the "LLCs" or collectively, "Plaintiffs"), state the following in support of their Motion to Amend their Complaint against Defendants, L.D. Amory and Company, Incorporated, C. Meade Amory, and Quinby J. Amory (collective "Defendants").

## I.    INTRODUCTION

The Plaintiffs filed their original Complaint on April 16, 2021. Since then, the LLCs' sole assets, the F/V QUINBY ALLIE and F/V BELLA SKY, were arrested in May and June 2021, respectively, and have been detained in Massachusetts by the Vessels' mortgagee, Truist Bank (f/k/a Branch Banking and Trust Company or "BB&T" now "Truist"). The Massachusetts arrest proceedings were caused by the Defendants' March 23, 2021 letter to BB&T, which falsely claimed that the LLCs defaulted on liens to L.D. Amory and Company, Inc. ("LDA") that nearly exceed the outstanding mortgages owed on the vessels. These "liens" were false, unsubstantiated, and/or knowingly over inflated. The Massachusetts arrest proceedings resulted

in judicial sales of the vessels on March 22, 2022 that are currently under review in the United States District Court for the District of Massachusetts. As a result of the Vessels arrests, detainment, and judicial sales, the Vessels have been unable to fish and the Plaintiffs have lost significant amounts of income. Based on the events that have transpired over the past year, the Plaintiffs move to amend their Complaint to add claims for Tortious Interference and Accounting, and add additional allegations and damages to the existing claim for Breach of Fiduciary Duty.

## II.    BACKGROUND

On March 18, 2022, this Honorable Court issued its Order denying the Motion to Dismiss the Plaintiffs' Complaint brought by Defendants, LDA, and Quinby J. Amory. *See ECF No. 45.* The Honorable Court's March 18, 2022 decision includes a detailed overview concerning the factual background of this matter, which Plaintiffs' now incorporate by reference. The Plaintiffs submit further pertinent information below in addition to the background previously summarized by this Honorable Court.

On September 11, 2020, C. Meade Amory ("Amory") reported that "The settlement checks for the crew were written and mailed. There will be no more checks sent and all accounts will be temporarily frozen. You will have no more direct communication – all communication will need to go through my lawyer – Mike Ware who is copied on this email." *See* ECF No. 1 ₱ 70, Exhibit G.

Without any access to the operating funds or credit cards of the LLCs, the Vessels were effectively tied up. *Id*. at ₱ 71.  Prior to Amory's conduct in freezing the accounts, the Vessels had been fishing and earning revenue, and would have continued to fish through the fall and winter of 2020. *Id.*

In January 2021, Dwyer used his own funds for the working capital to get both Vessels operating and fishing again, and, with the exception of the wrongful vessel arrests contrived and caused by Amory in the name of LDA, Dwyer ensured the Vessels fished as much as reasonably possible in order to pay vessel expenses and earn revenue for the LLCs. *See* ECF 1 at ⁋ 81.

On February 24, 2021, LDA recorded with the United States Coast Guard's Vessel Documentation Center false, fraudulent, and unlawful maritime liens for claimed necessaries against the Vessels in the amounts of $501,567.43 against F/V BELLA SKY and $591,131.80 against F/V QUINBY ALLIE. *See* ECF No. 1.

On March 12, 2021, LDA filed an *in rem* action against F/V QUINBY ALLIE and F/V BELLA SKY and *in personam* actions against the LLCs, Amory, and Dwyer in the United States District Court for the Eastern District of Virginia. *See* ECF 1 at ⁋ 84-86. On March 13, 2021, LDA arrested F/V BELLA SKY and the F/V QUINBY ALLIE. On March 14, 2021, the LLCs filed a Motion to Vacate Order of Warrant of Arrest, Quash the Arrest of the F/V QUINBY ALLIE and F/V BELLA SKY, for Attorneys' Fees and Costs, and Request for Emergency Hearing and Expedited Relief. ***The next day***, March 15, 2021, ***LDA voluntarily released the Vessels from arrest and dismissed the entire action***.

On March 23, 2021, LDA, by and through Triplett *as directed by Amory*, notified the Vessels' mortgagee BB&T (now "Truist"), of LDA's recorded maritime liens against F/V BELLA SKY in the amount of $501,567.43 and against F/V QUINBY ALLIE in the amount of $591,131.80 with the intent to have the mortgage holder declare an event of default and foreclose on the Vessels. *See* ECF No. 1, Exhibit J (LDA Lien Correspondence).  Specifically, Ms. Triplett stated: "This action creates a default on the ship mortgages and you are now subject to foreclosure. I would suggest that you immediately come forth with a solution on selling the

boats." *Id.* LDA falsely reported to Truist that the Plaintiffs owed LDA combined debts of $1,092,699.23. At that time, the Vessels combined principals owed on their respective mortgages with BB&T were in the range of $1,179,389.00. LDA's falsely claimed liens were just under the amount of outstanding principal owed on the Vessels' mortgages.

On April 16, 2021, the Plaintiffs filed their Verified Complaint and initiated the pending action against Defendants, LDA, Amory, and Quinby J. Amory. ECF No. 1.

On May 20, 2021, Truist filed its Verified Complaint for the *in rem* arrest of F/V QUINBY ALLIE. *See* Truist Verified Complaint, F/V QUINBY ALLIE Arrest Action, attached to the Proposed Amended Complaint as Exhibit V**.** On May 21, 2021, Truist filed its Verified Complaint for the *in rem* arrest of F/V BELLA SKY. See Truist Verified Complaint, F/V BELLA SKY Arrest Action, attached to the Proposed Amended Complaint as Exhibit W. On May 25, 2021, F/V QUINBY ALLIE was arrested and on June 1, 2021, the F/V BELLA SKY was arrested.

Upon information and belief, Truist relied on LDA's March 23, 2021 letter in determining that the Vessels had defaulted and said notice of the false liens set Truist's arrest proceedings in motion.

Due to the Massachusetts arrest actions, F/V QUINBY ALLIE and F/V BELLA SKY have been tied to the dock since May and June 2021 and unable to earn any fishing income.

On June 8, 2021, LDA and Quinby Amory filed their Motion to Dismiss Counts One and Two of the LLCs Complaint in this action and included notice that it had revised its liens against both Vessels. *See* ECF No. 27. LDA's Motion to Dismiss included newly alleged accounting of those revised liens, in which LDA reduced its lien against F/V BELLA SKY from $501,567.43 to $99,880.59 and its lien against F/V QUINBY ALLIE from $591,131.80 to $198,607.15. *Id*.

On November 15, 2021, LDA's counsel forwarded all counsel copies of its Amended Notices of Claim of Lien against F/V QUINBY ALLIE and F/V BELLA SKY. See LDA's Amended Liens dated November 2021, attached to the Proposed Amended Complaint as Exhibit X. LDA then alleged liens in the amount of $261,685.57 against F/V QUINBY ALLIE and $202,101.40 against F/V BELLA SKY for a new total claim of **$463,786.97**. *Id.*

On March 10, 2022, the Plaintiffs and the Defendants in the present action participated in Mediation before Magistrate Judge Marianne Bowler in the Massachusetts Arrest Actions pending in the United States District Court for the District of Massachusetts. Prior to and following Mediation, the Parties were attempting to resolve this matter with the Vessels' mortgagee Truist Bank and amongst the Parties in an attempt to avoid the judicial sale.

On March 16, 2022, Truist moved to amend the Order of Sale in the Massachusetts arrest actions and reported the figures owed by the LLCS for the outstanding mortgages and costs related to the arrests at that time were as follows:

- F/V QUINBY ALLIE:        $1,088,560.20

- F/V BELLA SKY:            $  471,343.52

*See* Truist's Motions and Affidavits in both Arrest Actions, attached to the Proposed Amended Complaint as Exhibit Y. These figures include interest, *custodia legis*, attorneys' fees, and other costs in the amount of $234,902.24 for F/V QUINBY ALLIE and $145,704.19 for F/V BELLA SKY. *Id.* The LLCs expect that Truist will increase its claimed amounts owed by the LLCs if the auctions are confirmed.

On March 21, 2022, this Honorable Court denied LDA's Motion to Dismiss. ECF No. 45.

On March 22, 2022, the judicial auction took place with the U.S. Marshal. Tremont Fisheries, LLC submitted the highest bid in the amount of $325,733 for F/V BELLA SKY,

which was significantly below F/V BELLA SKY's hull and permit valuation of $1,183,000. NJUP, LLC submitted the highest bid in the amount of $1,500,000, also significantly below F/V QUINBY ALLIE's hull and permit valuation of $2,180,000. Truist's Motions to Confirm the Vessel Sales, and the LLCs' Oppositions, are still pending in the Massachusetts action. If that Honorable Court confirms the judicial sales of F/V BELLA SKY and F/V QUINBY ALLIE, then the LLCs will lose their only assets.

On March 14, 2022, Truist Bank filed its Motions for Confirmation of Sale in the F/V QUINBY ALLIE and F/V BELLA SKY Arrest Actions. On May 25, 2022, NJUP, LLC filed its Motion for Confirmation of Sale of F/V QUINBY ALLIE.  The LLCs filed oppositions to all Motions to Confirm the Vessel sales.

On June 28, 2022, all Parties in the Massachusetts action, including counsel for the LLCs, Troy Dwyer, LDA, and Meade Amory, attended Oral Arguments on the pending Motions to Confirm the Vessel Sales before the Honorable Judge Allison D. Burroughs, who is presiding over the Vessel Arrest Actions in Massachusetts. Judge Burroughs took all matters under advisement and has not yet issued a ruling. At this stage, the future of the Vessels and whether the judicial sales will be confirmed is still unknown. Although, in the interest of moving this matter forward and before additional time lapses, the Plaintiffs seek to amend their Complaint in anticipation of Judge Burroughs ordering to confirm the Vessel sales which will result in the LLCs losing their sole assets.

## III.   ARGUMENT

### a.  Standard

Pursuant to Fed.R.Civ.P. 15(a), "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15 (a). Discretion to deny leave to amend is limited by the principle,

embodied in Rule 15(a) that "leave shall be freely given when justice so requires," and by the general policy embodied in the Federal Rules favoring resolution of cases on their merits. *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) (citing Fed.R.Civ.P. 1); *see also Espinosa v. Sisters of Providence Health Sys.*, 227 F.R.D. 24, 26 (D.Mass.2005) ("[T]he liberal amendment policy of Rule 15(a) is a mandate to be heeded.").

The Fourth Circuit has relied on *Foman v. Davis*, 371 U.S. 178, 182 (1962), for the general standard to be employed by federal courts in making a Rule 15(a) determination:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. the leave sought should, as the rules require, be "freely given."

*Davis*, 615 F.2d at 613.

*Foman's* factors embody a principle which focuses on prejudice or futility or bad faith as the only legitimate concerns in denying leave to amend, since only these truly relate to protection of the judicial system or other litigants. *Id.* (citing *Foman*, 371 U.S. at 182; *Howey v. United States*, 481 F.2d 1187, 1190-91 (9th Cir. 1973)); *See also Int'l Envtl. Mgmt., Inc. v. Envirotron, Ltd.*, 724 F. Supp. 2d 230, 235 (D. Mass. 2010) (citing *Chiara v. Dizoglio,* 59 F.Supp.2d 193, 198 (D.Mass.1999))("Rule 15(a) requires that leave to amend be given freely in the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive, or undue prejudice to the opposing party.").

Here, there is good cause for granting the Plaintiffs leave to amend their Complaint against all Defendants based on the events that have occurred over the past year, since the Complaint was originally filed, as outlined above. The Vessels were arrested *after* the Plaintiffs

filed this lawsuit in Virginia and LDA's Motion to Dismiss the Original Complaint was pending

until March 2022. That same month, the Vessels were sold at judicial auction in Massachusetts,

and Plaintiffs' local counsel in this action had to withdraw due to a conflict of interest.

Substituted counsel, Jason Ohana, also developed a conflict after getting retained and was finally

substituted in August 2022 with current local counsel. Now, with new counsel in place, Plaintiffs

promptly seek leave to amend. The Plaintiffs also note that throughout the past year, the Parties

attempted to resolve their disputes amongst each other and Truist for the release of the Vessels,

unfortunately without success. Further, since discovery in this matter has not yet commenced, the

relief sought herein would not delay or disrupt any discovery or pretrial proceedings. As

indicated below, the Plaintiffs have strong claims against the Defendants based on the

Defendants' conduct in causing the Vessels to be arrested in Massachusetts and therefore the

Plaintiffs pray that leave to amend their Complaint is granted.

### b. Claim against the Defendants for Tortious Interference with Business Expectancy

Under Virginia law, Plaintiffs can pursue a claim for tortious interference with a business

expectancy against the Defendants if the following can be proven: (1) the existence of a valid

business expectancy with a probability of a future economic profit; (2) defendant's knowledge of

the expectancy; (3) a reasonable certainty that plaintiff would have realized the expectancy

absent defendant's misconduct; (4) interference by improper methods; and (5) damage to the

plaintiff. *Goulmamine v. CVS Pharmacy*, 138 F.Supp.3d 652, 672 (E.D. Va. 2015).

There must be a probability that a future economic benefit would have accrued. *L-3

Commc'ns Corp.*, 926 F.3d at 94. Whether or not a probability of future economic benefit exists

is a fact-intensive determination. *L-3 Commc'ns Corp.*, 926 F.3d at 94. But the plaintiff may

offer "any credible evidence to demonstrate such a probability." *See id.* Indeed even "[a] regular

course of similar prior dealings may [be sufficient to] suggest a valid business expectancy." *Id.* at 95 (quoting *Am. Bus. Interiors, Inc. v. Haworth, Inc.*, 798 F.2d 1135, 1143 (8th Cir. 1986)); *Masco Contractor Service, Inc. v. Beals*, 279 F. Supp. 2d 699, 709–710 (E.D. Va. 2003).

With respect to the fourth element – "improper methods" – qualifying actions can take a variety of forms including, but not limited to: conduct that is illegal, fraud or misrepresentation, violations of an established standard of a trade or profession, misuse of inside or confidential information, breach of a fiduciary relationship, and unfounded litigation. *See Integrated Direct Mktg., LLC v. May*, 129 F. Supp. 3d 336, 370 (E.D. Va. 2015) (citing *Duggin v. Adams*, 234 Va. 221, 360 S.E.2d 832, 836-37) (1987) ("sharp dealing, overreaching, or unfair competition" may also constitute improper methods)).

Here, the Plaintiffs will be able to submit credible evidence through documentation and witness testimony to prove their tortious interference claim against the Defendants. *See L-3 Commc'ns Corp.*, 926 F.3d at 94. In January 2021, Dwyer used his own funds for the working capital to get both Vessels operating and fishing again, and, with the exception of the wrongful vessel arrests by LDA, he was ensuring the boats fished as much as possible reasonably possible in order to pay vessel expenses and earn revenue for the LLCs. *See* ECF No. 1, ⁋81. The Vessels were back regularly fishing and therefore before the arrests pending Massachusetts, the Plaintiffs had a valid business expectancy for future fishing profits using the Vessels and LDA, a business that unpacks and buys seafood from commercial fishing vessels, was well aware of this expectancy. The Vessels would have realized profits from their commercial fishing operations but for the Vessel arrests in Massachusetts in May-June, 2021 and subsequent sale at judicial auction on March 22, 2022.

The Defendants, again in bad faith and through Amory, controlled the actions which lead to the arrest of the Vessels in Massachusetts by directing Triplett to draft a letter to BB&T (Truist) on March 23, 2021 misrepresenting LDA's knowingly invalid liens. *See* ECF No. 1, Exhibit J (LDA Lien Correspondence).  Notably, the Defendants sent the letter to Truist *after* LDA voluntarily dissolved the arrests and released the Vessels in Virginia, and was therefore already on notice concerning the invalidity of its alleged liens. In causing LDA to send the March 23, 2021 letter to Truist, Amory breach his fiduciary duty to the LLCs and LDA mispresented the amounts allegedly owed on its falsely claimed loans. LDA falsely claimed that it was owed nearly just as much from the LLCs as Truist was owed on the outstanding principals on the Vessel mortgages. The Defendants used improper methods to cause Truist to arrest and ultimately sell the Vessels in Massachusetts by significantly over inflating LDA's alleged liens and reporting that its lien created a default on the ship mortgages.

The Defendants' actions in causing the Vessels to be arrested by notifying Truist of its false liens were conducted in bad faith and with wanton disregard for the LLCs. A year after first recording maritime liens against the Vessels totaling over one million dollars, LDA can now only attempt to substantiate *less than half* of the amount originally claimed, originally recorded with the Coast Guard, alleged in multiple federal courts, and represented to Truist.

Due to the Defendants' actions in causing Truist to initiate the Massachusetts arrest proceedings, the Plaintiffs have incurred substantial damages including, the Vessels lost income from missing the highly priced ilex squid seasons while the Vessels were detained as well as Truist's custodial costs and legal fees related to the arrest proceedings. Most importantly, the LLCs are set to lose the Vessels, their only assets, if the District of Massachusetts confirms the respective sales. The Defendants caused the series of events leading to Truist's arrests of the

Vessels and subsequent sales that occurred after the Plaintiffs' Complaint was filed in April 2021 and therefore amendment at this stage is proper.

### c. Amory's role in causing the Vessel arrests in Massachusetts is further support of his breach of fiduciary duties

The Plaintiffs seek to amend their Complaint to plead additional factual grounds in support of their claims against Amory for Breach of Fiduciary Duty (Count Three). Amory, as manager and member of the LLCs, owed fiduciary duties to the LLCs and breached those duties. *See* ECF No. 1, Exhibit H. Amory was required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the LLCs. By virtue of such duties, Amory as manager of the LLCs, was and is required to, among other things:

   a. Exercise good faith to ensure that the affairs of the LLCs were conducted in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of LLCs' business;
   b. Exercise good faith to ensure that the LLCs were operated in a diligent, honest, and prudent manner in compliance with all applicable federal and state laws, rules, regulations, requirements, and all contractual obligations, including acting only within the scope of their legal authority; and
   c. Refrain from wasting the LLCs assets or otherwise unduly benefitting himself and/or other entities associated with him at the expense of the LLCs.

Va. Code Ann. § 13.1-1024.1(A) provides that "[a] manager shall discharge his or its duties as a manager in accordance with the manager's good faith business judgment of the best interests of the limited liability company."

Upon information and belief, Amory instructed his Controller, Cynthia Triplett, to send notification to Truist of the invalid liens that caused the foreclosure and bank sale of the Vessels, to the detriment of the LLCs. Amory, in a direct, knowing, and willful breach of his fiduciary duties to the LLCs, caused the Vessel arrests in Massachusetts, which detained the Vessels, the only means by which the LLCs could earn revenue, and prevented the LLCs from earning revenue for over a year. Amory's history of wrongful behavior, self-dealing, and breaches of

fiduciary duty culminated in him effecting the arrests and sales of the Vessels which he is part owner to the detriment of the LLCs and the other owner, Dwyer.

The Massachusetts arrest proceedings were initiated in late May and June 2021, after the Plaintiffs' Complaint was filed. The Plaintiffs attempted in good faith to save the Vessels from judicial foreclosure over the course of 2021 and into 2022. However, the Vessels were sold at auction on March 22, 2022, and the Motions to Confirm said sales are still pending. Although the Massachusetts Court has not yet confirmed the Vessel sales, the LLCs face a substantial risk that they will lose their only assets due to Truist's arrest proceedings set in motion by the Defendants. Accordingly, amending the Complaint is proper at this stage before the Parties begin fact discovery and preparation for trial.

### d.   Claim for Accounting pursuant to Virginia Code

A manager, like a corporate director, has fiduciary duties to a limited liability company. *See Remora Investments, L.L.C. v. Orr,* 277 Va. 316, 321 (2009). Accounting is an equitable remedy long available in Virginia to require fiduciaries "to account for their actions in dealing with the funds of beneficiaries or principals." *McClung v. Smith*, 870 F. Supp. 1384, 1400 (E.D. Va. 1994). The fiduciary bears the burden to "establish that he has properly applied or disposed of the assets entrusted to him." *McClung v. Smith*, 870 F. Supp. 1387, 1400 (E.D. Va. 1994).

In addition to the common law remedy, Virginia authorizes an accounting in equity by statute. Virginia Code § 8.01-31 provides that an accounting in equity may be had against any fiduciary for receiving more than comes to his just share or proportion. The statute permits actions against a fiduciary who received more than his just share or proportion and a court may order an accounting of funds by a party when the requesting party shows a fiduciary relationship between the parties. *See Riverside Healthcare Ass'n, Inc. v. Forbes*, 281 Va. 522, 534 (2011).

Additionally, Virginia Code § 13.l-1028(B)(2) permits each member of a limited liability company to obtain from the manager, true and full information regarding the state of the business and financial condition of the limited liability company and other information regarding the affairs of the company.

As a Manager and Member, Amory owes a fiduciary duty to the LLCs. The LLCs' financial records received to date, as summarized above and in the LLCs' Amended Complaint, reveal significant discrepancies in the application and use of the LLCs' assets, including but not limited to, payment of almost $63,000 to the firm Hawkins, Burcher & Boaster for unknown purposes, failing to deposit full settlement proceeds from the Vessels' landings, transfer of $100,000 in funds from the LLCs to LDA, and causing the LLCs to incur debt to LDA without authority or notice to the LLCs' other Manager and Member. Thus, the evidence demonstrates that Amory received more than his "just share or proportion" from the LLCs.

In order to fully determine the scope of Amory's improper conduct, a full accounting is necessary to determine which vendors were properly paid and to settle the LLCs' accounts. The LLCs are unable to perform this accounting without the Amory's assistance due to the poor methods Amory used for the LLCs' bookkeeping and apparent commingling of the LLCs' operating funds with LDA's accounts. Pursuant to Va. Code §8.01-31, the Plaintiffs are entitled to obtain an accounting of the LLCs and are further entitled to true and full information regarding the state of the business and financial condition of the LLCs in accordance with Va. Code §13.1-1028(B)(2).

Despite multiple requests, Amory has not been forthcoming with an accurate accounting of the LLCs. At one point, Amory's counsel indicated that a "forensic accountant" had been retained, but no further information was disclosed. Accordingly, the Plaintiffs move to amend

their Complaint to include a count for Accounting pursuant to Va. Code §8.01-31 and Va. Code §13.1-1028(B)(2).

## IV.   CONCLUSION

Since the Plaintiffs filed their Complaint on April 16, 2021, much has transpired to warrant the Plaintiffs' requested amendment. The Defendants' actions in notifying Truist of false liens caused Truist to arrest the Vessels in Massachusetts, F/V QUINBY ALLIE on May 25, 2021 and F/V BELLA SKY on June 1, 2021. Since then, the Plaintiffs have lost significant amounts of income from having the Vessels, and the LLCs' sole assets, detained and not fishing, and are also subject to increasing interest, fees, and *custodia legis*. Although the sales of the Vessels in the Massachusetts arrest actions have not yet been confirmed, amendment is appropriate at this stage and before discovery in this matter is commenced. The Plaintiffs' requested amendment will not delay or disrupt any discovery or pretrial proceedings. A copy of the Amended Complaint showing all changes marked in redline (except formatting changes and deleting service instructions) is attached for reference as **Exhibit 1** and a copy of a clean version of the Amended Complaint with new exhibits, is attached for reference as **Exhibit 2.**

**WHEREFORE,** Plaintiffs, Troy D. Dwyer both individually and derivatively on behalf of Quinby Allie, LLC and Bella Sky, LLC pray that this Honorable Court grant this Motion and permit Plaintiffs leave to Amend their Complaint against all Defendants.

Respectfully submitted,

**TROY D. DWYER**, derivatively on behalf
of Bella Sky, LLC and Quinby Allie, LLC, and
Individually,


By: ____/s/ *Julia A. Rust*_____
        Of Counsel

Julia A. Rust, Esq. (VSB No.: 87270)
PIERCE MCCOY, PLLC
101 West Main Street, Suite 101
Norfolk, Virginia 23510
Telephone: (757) 216-0226
Facsimile: (757) 257-0387
julia@piercemccoy.com

and

By: ____/s/ *Kirby L. Aarsheim*_____
        Of Counsel, *Pro Hac Vice*

Kirby L. Aarsheim
BBO No.: 678774
FARRELL SMITH O'CONNELL
AARSHEIM APRANS LLP
27 Congress Street, Suite 109
Salem, MA 01970
Telephone: (978) 744-8918
Facsimile: (978) 666-0383
e-mail: kaarsheim@fsofirm.com

*Counsel for Troy D. Dwyer, derivatively on behalf*
*of Bella Sky, LLC and Quinby Allie, LLC, and*
*Individually*

## Certificate of Service

I hereby certify that on this 26th day of August 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Cyrus Wiley Grandy, Esq.
James L. Chapman, IV, Esq.
Crenshaw Ware & Martin, PLC
150 West Main Street, Suite 1500
Norfolk, VA 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
cwgrandy@cwm-law.com
jchapman@cwm-law.com
*Counsel for L.D. Amory and Company, Inc.*
*and Quinby J. Amory*

Nicholas R. Hobbs, Esq.
Michael B. Ware, Esq.
Schempf & Ware, PLLC
4000 George Washington Memorial Hwy
Yorktown, VA 23692
Telephone: (757) 240-4000
Facsimile: (757) 240-4001
nhobbs@4000law.com
mware@4000law.com
*Counsel for C. Meade Amory*

/s/ *Julia A. Rust*
Julia A. Rust, Esq.

16