IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION
In Admiralty

| | |
|---|---|
| **TROY D. DWYER,** *et al*.<br><br>         **Plaintiffs,**<br><br>   v.<br><br>**L.D. AMORY AND COMPANY, INCORPORATED,** *et al*.<br><br>         **Defendants.** | Civil No: 4:21-cv-00037-AWA-RJK |

.

### L.D. AMORY AND COMPANY INCORPORATED'S AND QUINBY J. AMORY'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND COMPLAINT

Defendants, L.D. Amory and Company Incorporated ("LDA") and Quinby J. Amory ("Mrs. Amory"), collectively the "Defendants", by and through counsel, for their brief in opposition to Plaintiffs' Motion to for Leave Amend its Complaint, state as follows.

### Procedural Background

Plaintiffs initiated this action against the Defendants, Meade Amory, Quniby Allie, LLC and Bella Sky, LLC[1] on April 16, 2021. The Complaint sought damages against LDA and Mrs. Amory for wrongful arrest. It also sought a declaratory judgment that LDA did not hold a valid maritime lien against the two fishing vessels, and further that the underlying debts were invalid and unenforceable. Docket No. 1, Counts 1, 2 and 5.

---

[1] Notably, the two LLC defendants are also two of the Plaintiffs to this action.

The original Complaint asserts causes of action based solely on LDA's arrest of the two fishing vessels on March 12, 2021.  Docket No. 1.  This Court denied Defendants' Motion to Dismiss as to the original Complaint on March 18, 2022.  Docket No. 45.

Since the original Complaint was filed, the same vessels have been arrested and auctioned at the request of Truist Bank, who holds the preferred ship mortgages on these vessels.  The bank's arrest of the vessels took place in Massachusetts on May 20, 2021, and the vessels were sold at a Marshal's sale on March, 22, 2022.  Proposed Amended Complaint, Docket No. 63.1 at ¶ 107-108 and ¶ 117.  Motions to confirm these sales were filed in May 2022, and remain pending before the District Court of Massachusetts.  *Id.* at ¶120.

Despite the fact that this wrongful arrest action and the Massachusetts actions initiated by the Bank have been pending for well over one year, Plaintiffs are just now seeking to amend the Complaint.  The amended Complaint adds theories of recovery based solely on events which occurred in the spring of 2021.  In particular, Plaintiffs' new causes of action are based entirely upon an email dated March 25, 2021 from LDA to Plaintiffs and their lead counsel, Kirby Aarsheim, which is attached as Exhibit J to the original Complaint.  For the Court's reference, a copy is also attached as Exhibit 1 here.  Docket No. 1-11.

Although the facts supporting Plaintiffs' new claim for tortious interference were known at the time the original Complaint was filed, Plaintiff chose not to include a cause of action for tortious interference.  Presumably, this is because Plaintiffs knew such a cause of action would not survive a motion to dismiss.  Nonetheless, Plaintiffs now seek to amend the Complaint to add a claim for tortious interference.  The proposed amended Complaint, however, does not, and cannot, state a claim for tortious interference.  Accordingly, the Plaintiffs' Motion for Leave to Amend the Complaint should be denied as the proposed amendments are futile.

## Standard of Review

Federal Rule of Civil Procedure 15(a) instructs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But the Court should deny a motion for leave to amend a complaint if the amendment would be futile. *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011). An amendment is futile if it "fails to state a claim under the applicable rules and accompanying standards." *Id.* (citing *U.S. ex rel. Wilson v. Kellog Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

### I. Plaintiffs' Motion should be Denied because the Amended Complaint Fails to State a Claim upon which Relief can be Granted.

Plaintiffs allege that LDA's action in notifying the bank of LDA's lien caused the bank to foreclose (by arresting the vessels in Massachusetts), and that Plaintiffs suffered damages in the form of lost fishing revenues, which they otherwise would have received if the vessels were not under arrest by the bank and had continued fishing. Docket No. 63.1. Accepting that these allegations are true for the purposes of this motion, these actions cannot give rise to a claim of tortious interference with business relationship or expectation.

To state a claim for tortious interference with business expectancy under Virginia law, the plaintiff must allege: "(1) *a contract expectancy or prospective business relationship*; (2) knowledge of the same by the defendant; (3) intentional interference with the expectancy; (4) *the defendant's use of improper means to interfere with the expectancy*; and (5) resulting damages to the plaintiff." *Frank Brunckhorst Co., LLC v. Coastal Atlantic, Inc.*, 542 F. Supp. 2d 452, 463 (E.D. Va. 2008) *quoting Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.,* 254 Va. 408, 414, 493 S.E.2d 375 (1997) (emphasis added). *See also, Haynes v. Jth Tax Inc.,* 2017 WL 11611681 at *5 (E.D. Va. Dec. 4, 2017); *quoting Smithfield Ham & Prod. Co. v. Portion Pac Inc.*, 905 F. Supp. 346, 340 (E.D. Va. 1995). Plaintiffs here simply have not met these elements.

      a.      **Contract or Business Expectancy with Probability of Future Economic Profit**

The first element of a tortious interference claim requires an anticipated contract or transaction with a third party (i.e. customer, client, buyer etc.) that will bring profit to the plaintiff. *Cox v. MAG Mutual Insurance Co.,* 2015 WL 1640513 at 4 (E.D. Va. April 9, 2015). Here, the only third party referenced in the proposed amended complaint is Truist Bank ("the Bank"), a creditor who held the mortgages on the two fishing vessels. No "transaction" or "relationship" between the LLCs and the Bank would ever give rise to a profit or an expectation of profit by the LLCs; it was simply an ongoing creditor/debtor relationship. Even if it did, a party to a loan agreement cannot be sued for tortious interference with that agreement as a matter of law. *Powell v. Bank of America N.A.*, 2011 WL 6130806 at *4 (E.D. Va. Dec. 8. 2011) *citing Fox v. Deese,* 362 S.E.2d 699, 708 (Va.1987) (*citing Chaves,* 335 S.E.2d at 102).

LDA is a guarantor of the Truist mortgages. Docket No. 63-1 at ¶34. Assuming that Plaintiffs' proposed amended Complaint asserts a claim for tortious interference with the contracts comprising the Truist mortgages, LDA, as a guarantor of those mortgages cannot be sued for allegedly interfering with those mortgages. *See Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 448 (E.D. Va. 2002) ("[I]t is axiomatic that a party cannot interfere with his own contract."). Thus, Plaintiffs' proposed amendments do not state a claim upon which relief can be granted.

Plaintiffs' proposed amendments also fail to allege interference with a business expectancy. The only damage alleged by the Plaintiffs in the proposed amendments was the loss of fishing revenue due to the arrest of the vessels—in other words, that but for the lien filing, the Bank would not have foreclosed and the vessels could continue to fish as usual. Docket No. 63-1 at ¶121, 193-197. The law is clear that an expectancy that the plaintiff would remain in

4

business cannot give rise to a claim of tortious interference. *Lee Pappas Body Shop, Inc. v. State Farm Mutual Automobile Insurance Co.*, 2021 WL 3609296 at *6 (E.D. Va. Aug. 13, 2021); *Cox v. Mag Mutual Insurance Co.,* 2015 WL 1640513 (E.D. Va. April 9, 2015). "Under Virginia law, a general expectancy to 'stay in business' is too general to support a tortious interference claim." *Cox* at *5; *Masco Contractor Services East, Inc. v. Beals,* 279 F. Supp. 2d 699, 710 (E.D. Va. 2003) (*citing Levine v. McLeskey,* 881 F. Supp. 1030, 1057 (E.D. Va. 1995)).

  b. **Alleged Interference Must Involve Improper Methods**

Where, as here, the plaintiff alleges interference with a business *expectancy*, a necessary element of the tort is that the interference be by "improper methods." *Haynes v. Jth Tax, Inc.,* 2017 WL 11611681 at *5 (E.D. Va. Dec. 4, 2017); *Powell v. Bank of America N.A*. at *4; *citing Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co. Inc.,* 493 S.E.2d 375, 378 (Va. 1997). "Examples include fraud, misrepresentation, deceit, defamation, undue influence, misuse of confidential information, unethical conduct, and violations of standard trade or business practices." *In re: Wood,* 2009 WL 2407815 at *6 (Bankr. E.D. Va. Aug. 3, 2009) *citing Duggin v. Adams*, 234 Va. 221, 227-228, 360 S.E. 2d 832 (1987).

Plaintiffs' Amended Complaint hinges on an allegation that on March 23, 2021, LDA, by and through Triplett:

> notif[ied] the Vessel's mortgage holder Branch Banking and Trust ("BB&T" or "Truist") of LDA's recorded maritime liens against the Vessel with the intent to have the mortgage holder declare an event of default and foreclose on the Vessels. . . . Specifically, Ms. Triplett stated: 'This action creates a default on the ship mortgages and you are now subject to foreclosure. I would suggest that you immediately come forth with a solution on selling the boats.'

*See* Docket No. 63-1 ¶ 95 and ¶ 9(m). A true and correct copy of Exhibit J to Plaintiffs' Complaint is attached as Exhibit 1.

Plaintiffs then allege that this March 23, 2021 communication from LDA to the Bank "set the [Bank's] arrest proceedings in motion," and further that the Bank relied on it in making its determination that the Vessels were in default of their mortgages, and would not have arrested the Vessels but for this communication from LDA. Docket No. 63-1 at ¶101-104.

Finally, the Amended Complaint alleges that LDA's communication to BB&T (Truist) led to the arrests, which "intentionally interfered with the LLC's expectancies, thus causing both actual and future damages to the LLC's", more specifically "the lost profits that would have been derived from the Vessels continuing to fish during the 2021 and 2022 seasons." *Id.* at 195-197. Moreover, Plaintiff Dwyer claims that he lost income from his lost salary as vessel manager and from his expected earnings as Captain. *Id.* at 197.

These allegations attempt to establish a colorable claim that the tortious interference was by improper means, a necessary element of the cause of action. The Court should note, however, that these allegations rest solely on the March 23, 2021 communication, which is set forth in Exhibit J to the original complaint. Docket No. 1-11. The subject email is set forth verbatim below:

_____

From: Cynthia Triplett <cynthia@amoryseafood.com>
Sent: Thursday, March 25, 2021 1:29:51 PM (UTC-05:00) Eastern Time (US & Canada)
To: 'troy dwyer' <troyddwyer@gmail.com>; Meade Amory <meade@amoryseafood.com>
Cc: Mike Ware <mware@4000law.com>; Kirby Aarsheim <kaarsheim@fsofirm.com>; Marissa M. Henderson <mhenderson@ventkerlaw.com>; David N. Ventker <dventker@ventkerlaw.com>; 'McEwing, Brian' <mcewing@lawofsea.com>; 'Patrick Brogan' <pbrogan@daveybroganpc.com>
Subject: Liens on Boat

Troy/Meade,

With respect to the debt owed to L.D. Amory & Company, Inc., attached you will find liens that have been filed against the titles of F/V Quinby Allie and F/V Bella Sky. This information has been recorded by the US Coast Guard and has been sent to BB&T Bank.

This action creates a default on the ship mortages and you are now subject to foreclosure. I would suggest that you immediately come forth with a solution on selling the boats.

Yours truly,

Cynthia L. Triplett, Controller

L.D. Amory & Company, Inc.
101 S. King Street
Hampton, VA 23669
757.722.1915 Office / 757.723.1194 Fax

cynthia@amoryseafood.com

---

The Court will note that this email is **NOT** addressed to the Bank or its counsel, but rather to the parties to this litigation, namely Troy Dwyer, Meade Amory, and their then attorneys, Mike Ware, Kirby Aarsheim, Marissa Henderson, David Ventker, Brian McEwing and Patrick Brogan. *See* Docket 1-11. The attachment to this email is in fact a letter from Brian McEwing, counsel to LDA, to BB&T dated March 23, 3021, which simply says "Enclosed please find the Notice of Claim of Lien for the F/V BELLA SKY and F/V QUINBY ALLIE." *Id*. There is no mention of foreclosure or default in Attorney McEwing's letter to the Bank or the attached Notices of Claim of Lien filed with the Coast Guard. *Id.* In short, the proposed amendments to the Complaint mischaracterize the only documents that allegedly support Plaintiffs' claim for tortious interference.

To the extent that Plaintiffs change course and claim that it was the McEwing letter to the Bank which supports their cause of action, LDA had a statutory duty to provide notice of the

filed liens to the Bank. 46 U.S.C. §31343(b)(1)(B)(ii). An action which is required by federal statute cannot possibly be regarded as improper.

Finally, it is anticipated that Plaintiffs will argue that it was not the filing of a claim of lien that prompted the Bank to foreclose by arresting the Vessels, but that it was actually the *amount* of the lien initially recorded. It is undisputed that the amount of the recorded liens were later reduced upon a further accounting, a fact which was brought to the Bank's attention long before the vessels were sold at auction and yet prompted no retraction of the arrests. In any event, the Bank's letter to the LLC's set forth the various default events which caused the arrest, including the sale of the QUINBY ALLIE in violation of the loan agreement and false or misleading representations and warranties on the part of the mortgagees. Docket No. 20-1. For the Court's reference, a copy is also attached as Exhibit 2 here. Docket No. 20-1.

Virginia law is quite clear that a party's exercise of a legal right cannot support a claim for tortious interference. *Carles E. Brauer Co., Inc. v. NationsBank of Virginia, N.A.*, 251 Va. 28, 36, 466 S.E.2d 382, 387 (1996). The Federal Maritime Lien Act permitted LDA to record its lien against the vessels and required LDA to notify all other lienholders, including the Bank, upon the recordation of those liens. 46 U.S.C. §31343. Thus, the recording of the lien, and the notification to the Bank, were exercises of LDA's legal rights and obligations, and cannot support a claim for tortious interference as a matter of law.

    **c.**    **Plaintiffs Have Not, and Cannot, Allege a Competitive Relationship between Plaintiffs and LDA**

A final unstated element of tortious interference under Virginia law is "a competitive relationship between the party interfered with and the interferor." *Lee Pappas Body Shop, Inc. v. State Farm Mutual Automobile Insurance Co.*, 2021 WL 3609296 at *7 (E.D. Va. 2021) *citing*

8

*17th St. Associates LLP v. Markel Int'l Ins. Co.*, 373 F. Supp. 2d 584, 600 (E.D. Va. 2005) (no tortious interference claim against plaintiff's insurance company).

Plaintiffs' proposed Amended Complaint does not allege that LDA is a competitor of the LLCs or Troy Dwyer. Docket 63-1. To the contrary, the Amended Complaint alleges that LDA operates a fish house, and unpacks and purchases seafood from commercial fishing vessels, and then sells such seafood to third parties. *Id.* at ¶¶ 4, 195. Conspicuously absent from the Amended Complaint are any allegations that LDA is a competitor, or that it would otherwise profit from the Bank's arrest of the vessels, or their sale by the U.S. Marshal.

In fact, LDA could be in a position to owe money to the Bank as a result of the arrest and sale of the vessels. If the net sale proceeds are insufficient to satisfy the Bank's mortgage claim, LDA, as a guarantor of the LLCs' loans to the Bank, would be liable for any excess amounts owed. Moreover, even if the sale had brought sufficient funds to cover the mortgage and LDA's claims against the vessels, LDA would only recoup its outlays of funds to supply necessaries to the vessels, and then only if the Court finds that it did, in fact, have a maritime lien on the vessels. In other words, LDA could not possibly "profit" from the vessels' arrest and sale.

## Conclusion

Because Plaintiffs' have not, and cannot, allege sufficient facts to state a claim for tortious interference against LDA and Mrs. Amory, their Motion for Leave to Amend the Complaint is futile and should be denied.

Dated: September 9, 2022        */s/ C. Wiley Grandy*
James L. Chapman, IV, VSB No. 21983
C. Wiley Grandy, VSB No. 82154
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735

jchapman@cwm-law.com
cwgrandy@cwm-law.com

and

Mary Elisa Reeves (admitted *pro hac vice*)
Reeves McEwing LLP
1004 S. Front Street
Philadelphia, PA 19147
Telephone: (267) 324-3773
Facsimile: (267) 519-9463
reeves@lawofsea.com
*Counsel for Defendants L.D. Amory and Company, Incorporated and Quinby J. Amory*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 9th September 2022, I electronically filed the foregoing using the CM/ECF system which will send notification of such filing to all counsel or record.

                                                                                                        */s/ C. Wiley Grandy*