**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**
In Admiralty

**TROY D. DWYER, derivatively on**
**Behalf of Quinby Allie, LLC and**
**Bella Sky, LLC,**

**and**                                                    **Civil No: 4:21-cv-37**

**TROY D. DWYER, individually,**

     **Plaintiffs,**

**v.**

**L.D. AMORY AND COMPANY,**
**INCORPORATED, et. al.**

<u>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO**
**AMEND COMPLAINT AGAINST ALL DEFENDANTS**</u>

Plaintiffs, Troy D. Dwyer, both individually and derivatively on behalf of Quinby Allie, LLC and Bella Sky, LLC, submit their Reply Memorandum in Support of their Motion for Leave to Amend the Complaint against all Defendants.

Defendants assert two main arguments in opposition to Plaintiffs' request for leave to amend: (1) the new theories of recovery are based on events that occurred when the original Complaint was filed; and (2) the amendment to add a claim for Tortious Interference with Business Expectancy would be futile because it fails to state a claim upon which relief can be grated. ECF No. 65 at 2. Defendants' first argument is factually inaccurate and ignores the key events, which occurred *after* the original Complaint was filed. The second argument similarly fails because it requires the Court to prematurely assess the merits of the claim, which is improper at this stage and under the applicable standard of review.

I.    **The Amendment is Based on Events that Occurred After the Original Complaint was Filed**

Contrary to Defendants' claims, the Plaintiffs have not delayed in moving to amend the Complaint. Defendants allege that "the facts supporting Plaintiffs' new claim for tortious interference were known at the time the original Complaint was filed…" ECF No. 65 at 2. However, this argument is based on a false premise; namely, Defendants believe that the "new causes of action are based entirely upon an email dated March 25, 2021" that predated the original Complaint filing on April 16, 2021. *Id*. Plaintiffs' new claims are not based solely on that correspondence.  Rather, they are based on the consequences of that correspondence—the arrest and judicial auction of the vessels, which occurred after the original Complaint was filed.  It was not until May 25, 2021 that the F/V QUINBY ALLIE was arrested, and June 1, 2021 when the F/V BELLA SKY was arrested, both in Massachusetts. Even then, the Plaintiffs could not have appreciated the significant delay and ultimate sale of the vessels since they were actively trying to save the vessels from judicial auction.

In February 2022, *ten months after* this lawsuit was filed, undersigned counsel learned further details concerning the material impact that LDA's lien notices had on prompting the Massachusetts arrest proceedings. Plaintiffs expect the details of such information will be obtained from Truist during discovery. That information could not have been known to the Plaintiffs at the time their original Complaint was filed, since the Complaint was file *before* the arrest actions were even initiated.

In March 2022, the Parties proceeded with attending Mediation in the United States District Court for the District of Massachusetts again in further efforts to save the vessels from judicial auction. Mediation was unsuccessful and the vessels, the LLCs' sole assets, were sold at judicial

auction on March 22, 2022. Since then, the Plaintiffs have been engaged in motion practice in the Massachusetts arrest actions concerning the low bids on the vessels.

Notwithstanding the foregoing, Plaintiffs have also had to engage three separate local counsel firms due to conflicts of interest that developed after being retained. Ventker Henderson, PLLC withdrew in March 2022 due to a conflict of interest. Substituted counsel, Jason Ohana, also developed a conflict after getting retained and was finally substituted in August 2022 with current local counsel. The Plaintiffs now move for leave to amend their Complaint with new counsel finally in place. The Plaintiffs further note that although discovery in this matter is open, the parties have not issued any discovery beyond Initial Disclosures. Therefore the relief sought herein will not delay or disrupt any discovery or pretrial proceedings.

## II.    The New Claim for Tortious Interference with Business Expectancy is Not Futile

LDA's attempts to argue the merits of the Plaintiffs' tortious interference claims pursuant to the Fed. R. Civ. P. 12(b)(6) standard is premature at this stage. The standard to be applied here is pursuant to Fed. R. Civ. P. 15(a), which requires that leave to amend be given freely in the absence of any apparent reason such as undue delay, bad faith or dilatory motive, or undue prejudice to the opposing party. *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). While "futility" is a factor the Court may consider, "[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, *see*, e. g., *DeLoach v. Woodley*, 405 F.2d 496, 497 (5th Cir. 1968), conjecture about the merits of the litigation should not enter into the decision whether to allow amendment." *Davis*, 615 F.2d at 613. *See also Smithfield Foods, Inc. v. United Food & Commercial Workers Intern. Union*, 254 F.R.D. 274, 280 (E.D. Va. 2008) ("even where the possibility of relief is remote ... [a] proposed amendment may be labeled futile only where it is

legally insufficient on its face") (internal citations omitted). "To find futility, this Court would have to determine that the Proposed Amended Complaint 'fails to satisfy the requirements of the federal rules.'" *Cortez-Melton v. Capital One Financial Corp.*, 2019 WL 12073968, *3 (E.D. Va. Oct. 9, 2019).

Nevertheless, the Plaintiffs submit that their claim for Tortious Interference with Business Expectancy in the Proposed Amended Complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" in order to survive a possible Fed. R. Civ. P. 12(b)(6) motion. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

### a. The Amended Complaint Alleges "Business Expectancy" With a Third Party

Defendants allege that the Plaintiffs have failed to meet the first element of tortious interference because "the only third party reference in the proposed amended complaint is Truist Bank…" and "No 'transaction' or 'relationship' between the LLCs and the Bank would ever give rise to a profit…" ECF No. 65 at 4. As indicated in the Plaintiffs' Complaint, the Vessels had returned to fishing operations prior to the arrests and therefore had a valid expectancy for future fishing profits. *See* Proposed Amended Complaint, ECF 63-2 at ¶¶ 191-193. The "third parties" that Plaintiffs anticipated receiving profits from are the fish houses and other customers who had been buying the Plaintiffs' Vessels' catch before the Massachusetts arrests. *See id.*   Therefore, Defendants' focus on a transaction or relationship with Truist is misplaced and irrelevant.

Next, LDA claims that it cannot be sued for allegedly interfering with the Plaintiffs' mortgages with Truist because it was "a guarantor of the Truist mortgages." ECF No. 65 at 4. However, the case LDA relies on for this point, *Storey v. Patient First Corp.*, acknowledges that "if it can be shown that an agent of a party to the contract was acting outside the scope of his employment in tortiously interfering with such contract, then the aggrieved party may be entitled

to recover…." *Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 448 (E.D. Va. 2002) (citing *Wuchenich v. Shenandoah Memorial Hospital*, 215 F.3d 1324, 2000 WL 665633, at **17 (4th Cir. 2000) (unpublished); *Fox v. Deese*, 234 Va. 412, 427, 362 S.E.2d 699 (Va. 1987); *Haigh v. Matsushita Electric Corp. of America*, 676 F.Supp. 1332, 1349 (E.D.Va. 1987)). Here, by notifying Truist of LDA's overinflating and invalid lien amounts, LDA was acting outside the scope of its role as a guarantor of the Promissory Note and instead acting in its own interests as a third-party creditor to recover on its alleged liens against the Vessels.

LDA continues on to claim that Plaintiffs' proposed amendments fail to allege interference with a business expectancy because to "stay in business" is allegedly not enough to support such a claim. Although the Plaintiffs have effectively gone out of business by losing their sole income-generating assets (the Vessels), Plaintiffs' claim is not so broad. Rather, it is limited to the valid and specific business expectancies for the income the vessels anticipated receiving from selling its catches to fish houses after the regular fishing trips it planned to take during the 2021 and 2022 fishing seasons. The Vessels have previously sold to and expected to continue to sell to the following fish houses: Chesapeake Bay Packing, Fulcher's Seafood, LLC, The Town Dock, Seafreeze Shoreside, Bergies Seafood, Inc., and Atlantic Coast Seafood, Inc.[1] The Plaintiffs had a particular expectancy that the Vessels would have continued to fish and earn significant revenues during the 2021 and 2022 seasons from these fish houses and were reasonably certain that absent the LDA's misconduct, the Plaintiffs would have realized that expectancy. *Cox v. MAG Mut. Ins. Co.,* 2015 WL 1640513, at *5 (E.D. Va. Apr. 9, 2015) (citing *N.Y. Carpet World, Inc. v. Grant,* 912 F.2d 463, 1990 WL 123871, at *2 (4th Cir.1990) ("a particular expectancy must exist and it must

---

[1] Although the proposed Amended Complaint does not specifically name the fish houses that the Vessels frequently did business with and expected to continue doing business with during the 2021 and 2022 fishing seasons, this can be easily remedied by Plaintiffs at the Court's request.

be reasonably certain that absent the defendant's misconduct, the plaintiff would have realized the expectancy."). Further, the cases LDA's cites in support of its opposition discuss fact patterns with attenuated resulting damages and not facts similar to here, where the Plaintiffs lost significant revenues from fishing operations as well as the LLCs' sole assets. *See Lee Pappas Body Shop, Inc. v. State Farm Mut. Auto. Ins. Co.,* 2021 WL 3609296, at *6 (E.D. Va. Aug. 13, 2021) ("The Complaint states generally that Plaintiffs lost customers as a result of Defendants' tactics…"); *Cox v. MAG Mut. Ins. Co.*, 2015 WL 1640513, at *5 (E.D. Va. Apr. 9, 2015) ("Cox's hope that ten unnamed former or current customers would choose him cannot rise above a speculative level.).

### b.   *The Amended Complaint Alleges "Improper Methods"*

LDA claims that its notice to Truist of its outstanding liens cannot give rise to the "improper methods" element of the Plaintiffs' tortious interference claim. As indicated in the Plaintiffs' proposed Amended Complaint, LDA's "improper methods" were not its notice alone to Truist, but its significantly overinflated liens that nearly matched Truist's outstanding mortgages on the Vessels. *See* Proposed Amended Complaint, ECF No. 63-2 at ¶¶ 101-106. Truist's Notice of Default letter to Amory dated May 20, 2021 acknowledges LDA's Notice of Claim of Lien submitted by LDA to Truist as causing the event of default, which led to the Massachusetts arrests shortly thereafter. *See* ECF No. 65-2. The Plaintiffs expect that discovery of Truist's representatives will confirm that LDA's overinflated lien amounts were a material cause of default and the Vessel arrests.

### c.   *The Amended Complaint Is Not Required to Allege a "Competitive Relationship"*

Lastly, "a competitive relationship between the party interfered with and the interferor" is not a requirement to prove a tortious interference claim. The cases cited by LDA reference the competitive relationship as an example of "prima facie evidence of a motive to interfere." *See 17th*

*St. Assocs., LLP v. Markel Int'l Ins. Co.*, 373 F. Supp. 2d 584, 601 (E.D. Va. 2005). In apparent justification for its lack of motive to interfere, LDA claims that it "could not possibly 'profit' from the vessels' arrest and sale." This is untrue since LDA's motivation in forcing the Vessels' arrest and sale was to recover its outstanding alleged lien amounts by filing claims in the arrest proceedings, as it did in the Massachusetts actions. LDA's claims here are also seriously undermined by the fact that LDA initiated its own arrest proceedings in March, just a few months before Truist's actions. LDA would not have initiated its own arrest proceedings in March or filed claims against the Massachusetts arrest actions if it "could not possibly 'profit' from the vessels' arrest and sale."

**III.    Defendants Do Not Oppose the Proposed Additional Allegations Concerning Meade Amory's Breaches of Fiduciary Duties or the New Claim for Accounting**

In Defendants' Oppositions to the Plaintiffs' Motion for leave to amend the Complaint, the Defendants raise no opposition to Plaintiffs' request to amend to plead additional factual grounds in support of their claims against Amory for Breach of Fiduciary Duty (Count Three) or the proposed new claim for Accounting (Count Seven). Accordingly, any opposition is waived and Plaintiffs' Motion on those grounds should be granted without objection.

**WHEREFORE,** Plaintiffs, Troy D. Dwyer both individually and derivatively on behalf of Quinby Allie, LLC and Bella Sky, LLC, pray that this Honorable Court grant their Motion and permit Plaintiffs leave to Amend their Complaint against all Defendants.

Respectfully submitted,

**TROY D. DWYER**, derivatively on behalf
of Bella Sky, LLC and Quinby Allie, LLC, and
Individually,


By:     /s/ *Julia A. Rust*
            Of Counsel

Julia A. Rust, Esq. (VSB No.: 87270)
PIERCE MCCOY, PLLC
101 West Main Street, Suite 101
Norfolk, Virginia 23510
Telephone: (757) 216-0226
Facsimile: (757) 257-0387
julia@piercemccoy.com

and

By:  /s/ *Kirby L. Aarsheim*
     Of Counsel, *Pro Hac Vice*

Kirby L. Aarsheim
BBO No.: 678774
FARRELL SMITH O'CONNELL
AARSHEIM APRANS LLP
27 Congress Street, Suite 109
Salem, MA 01970
Telephone: (978) 744-8918
Facsimile: (978) 666-0383
e-mail: kaarsheim@fsofirm.com

*Counsel for Troy D. Dwyer, derivatively on behalf*
*of Bella Sky, LLC and Quinby Allie, LLC, and*
*Individually*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 22nd day of September 2022, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

Cyrus Wiley Grandy, Esq.
James L. Chapman, IV, Esq.
Crenshaw Ware & Martin, PLC
150 West Main Street, Suite 1500
Norfolk, VA 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
cwgrandy@cwm-law.com
jchapman@cwm-law.com
*Counsel for L.D. Amory and Company, Inc.*
*and Quinby J. Amory*

Mary Elisa Reeves (admitted *pro hac vice*)
Reeves McEwing LLP
1004 S. Front Street
Philadelphia, PA 19147
Telephone: (267) 324-3773
Facsimile: (267) 519-9463
reeves@lawofsea.com
*Co-Counsel for L.D. Amory and Company, Inc.*
*and Quinby J. Amory*

Nicholas R. Hobbs, Esq.
Michael B. Ware, Esq.
Schempf & Ware, PLLC
4000 George Washington Memorial Hwy
Yorktown, VA 23692
Telephone: (757) 240-4000
Facsimile: (757) 240-4001
nhobbs@4000law.com
mware@4000law.com
*Counsel for C. Meade Amory*

/s/ *Julia A. Rust*
Julia A. Rust, Esq.