# Exhibit V

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**TRUIST BANK,**

      **Plaintiff,**

v.

**F/V QUINBY ALLIE, OFFICIAL
NUMBER 507438, HER ENGINES,
TACKLE, FURNISHINGS, EQUIPMENT,
SUPPLIES, FISHING PERMITS, AND
OTHER APPURTENANCES,** *in rem,*

      **Defendant.**

**Civil Action No.** 21-10835

## VERIFIED COMPLAINT IN ADMIRALTY
## AND PRAYER FOR *IN REM* ARREST

Now comes the Plaintiff, Truist Bank (f/k/a Branch Banking and Trust Company) ("Truist"), by and through undersigned counsel, Clinton & Muzyka, P.C., and as for its Complaint against the F/V QUINBY ALLIE, Official No. 507438, her engines, tackle, furnishings, equipment, supplies, fishing permits, and any and all fishing and other appurtenances, accessories and additions, improvements and replacements (the "Vessel"), *in rem,* for foreclosure of a preferred ship mortgage, states as follows:

      1.    Truist is a bank organized under the laws of the State of North Carolina, with its principal place of business in the State of North Carolina.

      2.    The Vessel is a fishing vessel flagged and documented in the United States.

      3.    Venue is proper in this Court because the Vessel is now, or will be during the pendency of this action, afloat upon the waters of this District.

      4.    This is an admiralty and maritime claim *in rem* within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and the Supplemental Rules for Admiralty or Maritime

Claims and Asset Forfeiture Actions. Jurisdiction is proper under 28 U.S.C. § 1333 and under 46 U.S.C. §§ 31321 *et seq.*

5.      On or about September 27, 2019, QUINBY ALLIE, LLC, a Virginia limited liability company with its principal place of business in Hampton, Virginia ("Mortgagor"), duly executed a promissory note payable to Branch Banking and Trust Company (now Truist) in the original principal amount of $998,212.90 (the "Note"). A true and correct copy of the Note is attached hereto as ***Exhibit "A".***

6.      On or about September 27, 2019, Mortgagor was the sole owner of the whole of the Vessel. To secure the payment of the Note, Mortgagor duly executed and delivered to Branch Banking and Trust Company (now Truist) a preferred mortgage upon the Vessel dated September 27, 2019 (the "Preferred Mortgage"). A true and correct copy of the Preferred Mortgage is attached hereto as ***Exhibit "B."***

7.      The Preferred Mortgage was duly recorded with the U.S. Coast Guard's National Vessel Documentation Center on October 1, 2019, at Batch #: 68025100 / Document ID #: 2, in accordance with 46 U.S.C. §§ 31321 *et seq.*, and it otherwise fulfills all requirements to constitute a preferred mortgage under that Act.

8.      Mortgagor has defaulted under the Note, the Preferred Mortgage, and related documents. By reason of said defaults, Truist has elected to exercise its option under the Note to accelerate and declare the entire indebtedness secured by the Preferred Mortgage immediately due and payable in full. The principal amount due under the Note as of May 19, 2021 is $878,098.38. Accumulated interest due under the Note as of May 19, 2021 is $16,336.51 and fees and costs in the amount of $3,543.64 have accrued on the Note.

**WHEREFORE**, Plaintiff, Truist Bank, respectfully prays:

1.　　that a warrant of arrest issue against the F/V QUINBY ALLIE, her engines, tackle, furnishings, equipment, supplies, fishing permits, etc., and that all persons claiming any interest therein may be cited to appear and answer this Complaint;

2.　　that this Court direct the manner in which the actual notice of the commencement of this civil action shall be given to the Master or other ranking officer or caretaker of the Vessel, and to any person which has recorded a notice of claim of any undischarged lien upon the Vessel;

3.　　that the Preferred Mortgage be declared to be a valid and subsisting lien in the sum of $878,098.38 outstanding principal, plus interest at 15.00% from May 20, 2021, $16,336.51 in accumulated interest, and $3,543.64 in accrued fees and costs, together with all amounts required to be disbursed by Truist for the care and preservation and insurance and the cost of any additional insurance on the Vessel, and all other advances, expenses, attorneys' fees, costs and disbursements on Truist herein, with interest at 15.00% per annum thereon, such lien to be prior and superior to the interest, liens, or claims of any and all persons whatsoever, except such persons as may hold preferred maritime liens on the Vessel;

4.　　that the F/V QUINBY ALLIE, her engines, tackle, furnishings, equipment, supplies, fishing permits, etc. be condemned and sold to pay the same;

5.　　that it be decreed that any and all persons claiming any interest in the Vessel are forever barred and foreclosed of and from all right or equity of redemption or claim of, in or to the mortgaged Vessel and every part thereof; and

6.　　that Truist have such other and further relief that law and justice may require.

**TRUIST BANK**
By its attorneys,
**CLINTON & MUZYKA, P.C.**

"/s/Thomas J. Muzyka"
**Thomas J. Muzyka**
**BBO No. 365540**
**John J. Bromley**
**BBO No. 672134**
Board of Trade Building
One India Street, Suite 200
Boston, MA 02109
(617) 723-9165
F: (617) 720-3489
tmuzyka@clinmuzyka.com
jbromley@clinmuzyka.com

AND

John E. Holloway, Esq. (VSB No. 28145)
Ryan T. Gibson, Esq. (VSB No. 83183)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: 757-687-7724
Facsimile: 757-687-7510
Email: john.holloway@troutman.com
Email: ryan.gibson@troutman.com
*Counsel for Truist Bank*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

TRUIST BANK,

     Plaintiff,

v.                                                                                  Civil Action No. _____

F/V QUINBY ALLIE, OFFICIAL
NUMBER 507438, HER ENGINES,
TACKLE, FURNISHINGS, EQUIPMENT,
SUPPLIES, FISHING PERMITS, AND                      **IN ADMIRALTY**
OTHER APPURTENANCES, *in rem*,

     Defendant.

## VERIFICATION OF COMPLAINT

     I, Steve Blevins, declare as follows:

1.     I am the Senior Vice President of Truist Bank, the Plaintiff herein.

2.     I have read the foregoing Complaint and know the contents thereof.

3.     The Complaint is true of my own knowledge, except as to the matters therein
stated upon information and belief and, as to those matters, I believe them to be true.

     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true
and correct.

     Executed this 20th day of May, 2021.

                                       _____
                                              Steve Blevins

# EXHIBIT A



*9700274333000021472*

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $998,212.90 | 09-27-2019 | 09-27-2024 | 00002 | | 9700274333 | 15448 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** QUINBY ALLIE, LLC; L. D. AMORY AND
COMPANY, INCORPORATED; A & D FISHERIES,
LLC; and BELLA SKY, LLC
101 S KING ST
HAMPTON, VA 23669-4025

**Lender:** BRANCH BANKING AND TRUST COMPANY
Peninsula - Commercial Loans
737 J Clyde Morris Blvd
Newport News, VA 23601-1538

### IMPORTANT NOTICE

THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.

**Principal Amount: $998,212.90**                    **Date of Note: September 27, 2019**

**PROMISE TO PAY.** QUINBY ALLIE, LLC; L. D. AMORY AND COMPANY, INCORPORATED; A & D FISHERIES, LLC; and BELLA SKY, LLC ("Borrower") jointly and severally promise to pay to BRANCH BANKING AND TRUST COMPANY ("Lender"), or order, in lawful money of the United States of America, the principal amount of Nine Hundred Ninety-eight Thousand Two Hundred Twelve & 90/100 Dollars ($998,212.90), together with interest on the unpaid principal balance from September 27, 2019, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.500%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 59 regular payments of $10,872.88 each and one irregular last payment estimated at $579,063.93. Borrower's first payment is due October 27, 2019, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on September 27, 2024, and will be for all principal, accrued interest, and all other applicable fees, costs and charges, if any, not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied to any unpaid collection costs, late and other charges and fees, accrued unpaid interest, and principal in such order as Lender may determine in its sole and absolute discretion. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**REAMORTIZATION.** In addition to other rights herein, Lender reserves the right in its sole discretion, from time to time, to (a) adjust any periodic fixed payment in such amounts and at such times to repay principal at the amortization period originally agreed upon and accruals of interest as the same becomes due, and (b) increase Borrower's payments to pay all accruals of interest for the period and accruals of unpaid interest from previous periods.

**PREPAYMENT PENALTY.** Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: Each prepayment of the principal balance of this Note, whether in whole or in part and whether voluntary, mandatory, upon acceleration or otherwise, shall be made after giving the Lender at least two (2) Banking Days' notice and shall be accompanied by prepayment compensation in the amount deemed necessary by the Lender to compensate the Lender for any losses, costs or expenses which the Lender may incur as a result of such prepayment (the "Prepayment Compensation"). Any prepayment of principal shall also be accompanied by a payment of interest accrued to date on this Note, together with any and all late charges, attorneys' fees and other sums due thereon. "Banking Day" shall mean any day other than a Saturday, Sunday, federal holiday or other day in which the Lender is authorized or required by applicable law to be closed. If the Borrower fails to pay the Prepayment Compensation when due, the amount of the Prepayment Compensation shall thereafter bear interest until paid at the interest rate after default as specified in this Note. All prepayments shall be applied to the principal installments due under this Note in the inverse order of their maturities. The determination of the amount of the Prepayment Compensation due the Lender hereunder shall be made by the Lender in good faith and shall be conclusive and binding upon the Borrower absent manifest error; provided, however, that the Prepayment Compensation shall in no event exceed the maximum prepayment compensation permitted by applicable law and this Note shall be construed to give maximum effect to the provisions contained herein.

The Prepayment Compensation shall be calculated as follows:
For any principal prepayment of this Note, the Borrower shall pay 1% of the amount of the outstanding principal balance only when credit is refinanced with another financial institution. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: BRANCH BANKING AND TRUST COMPANY, Peninsula - Commercial Loans, 737 J Clyde Morris Blvd, Newport News, VA 23601-1538.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 15.000%. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, or a trustee or receiver is appointed for Borrower or for all or a substantial portion of the assets of Borrower, or Borrower makes a general assignment for the benefit of Borrower's creditors, or Borrower files for bankruptcy, or an involuntary bankruptcy petition is filed against Borrower and such involuntary petition remains undismissed for sixty (60) days.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**CHANGE IN OWNERSHIP - LIMITED LIABILITY COMPANY.** The issue, transfer or sale of an ownership interest of twenty-five percent (25%) or more of the Borrower or Guarantor that is a limited liability company shall constitute an Event of Default under this instrument or agreement.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest, together with all other applicable fees, costs and charges, if any, immediately due and payable, and then Borrower will pay that amount.

**LENDER'S REMEDIES.** Upon an Event of Default, in addition to Lender's rights set forth above, Lender may, at its option and without notice to Borrower (i) cease making advances or disbursements; (ii) advance funds necessary to remedy any default or pay any lien filed against any of the Collateral; (iii) take possession of the Collateral or any part thereof; (iv) foreclose Lender's security interest and/or lien on any Collateral in accordance with applicable law; (v) make demand upon any or all Guarantors; and (vi) exercise any other right or remedy which Lender has under the Note or any related documents or which is otherwise available at law or in equity. Upon an Event of Default, Lender may immediately apply the rate specified in the Interest After Default provision set forth above until the Indebtedness has been paid in full or until the default has been satisfactorily cured which may be allowed at the sole discretion of the Lender, and such rate shall apply after judgment. All of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Any election by Lender to pursue any remedy shall not exclude the right to pursue any other remedy unless expressly prohibited by law, and any election by Lender to make expenditures or to take action to perform an obligation of Borrower, or of any Grantor, shall not affect Lender's right to declare a default and exercise its rights and remedies.

**RETURN PAYMENT FEE.** Borrower shall pay to Lender a returned payment fee if the Borrower or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Lender because of nonpayment due to nonsufficient funds.

**ATTORNEYS' FEES; EXPENSES.** Subject to any limits under applicable law, upon default, Borrower agrees to pay Lender's attorneys' fees and all of Lender's other collection expenses, whether or not there is a lawsuit, including without limitation legal expenses for bankruptcy proceedings.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Virginia.

**CONFESSION OF JUDGMENT.** Upon a default in payment of this Note at maturity, whether by acceleration or otherwise, Borrower hereby irrevocably authorizes and empowers Christina Volzer Bailey and Lowell Patterson as Borrower's attorney-in-fact to appear in the Circuit Court of Fairfax County clerk's office and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. By a written instrument Lender may appoint a substitute for the above named attorney-in-fact. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right

# PROMISSORY NOTE
## (Continued)

**Loan No: 00002**                                                                                  **Page 3**

to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by (A) a Commercial Security Agreement dated September 27, 2019 made and executed between A & D FISHERIES, LLC and Lender on collateral described as All of Debtor's rights, title and interests in the collateral described below, whether now owned or hereafter acquired, and wherever located: (1) all Inventory, including all returned inventory, (2) all Equipment, including all Accessions thereto, and all manufacturer's warranties, parts and tools therefor; (3) all General Intangibles, including all Payment Intangibles, copyrights, trademarks, patents, tradenames, tax refunds, company records (paper and electronic), rights under equipment leases, warranties, software licenses and all Federal and state fishing permits
(and all species-specific permits associated therewith) now owned or hereafter acquired, including, but not limited to, those that were assigned to, connected with, or appurtenant to F/V LANGLEY DOUGLAS (Official No. 606719) (the "Vessel") and Northeast Federal Fishery Permit 410201, together with all amendments, supplements, renewals and/or replacements therefor; (4) all licenses, allocations, histories and quotas relating to the federal fishing rights in connection with the Vessel, including any renewals of such licenses, allocations, histories and quotas from time to time acquired by Debtor; (5) all supporting Obligations; (6) all proceeds (cash and non-cash) and Products of the foregoing collateral. The foregoing also includes the limited access fishing rights and fishing permit history in the Multispecies, Monkfish, Summer Flounder, Scup, Black Sea Bass, Longfin Squid/butterfish, Illex, Limited Access General Category Scallop, and American lobster fishery as set forth in that certain Confirmation of Permit History dated March 2, 2018. All capitalized terms used herein that are not otherwise defined herein shall have the meanings assigned to them in the Uniform Commercial Code as adopted in the Commonwealth of Virginia.

(B) a Commercial Security Agreement dated September 27, 2019 made and executed between BELLA SKY, LLC and Lender on collateral described as All of Debtor's rights, title and interests in the collateral described below, whether now owned or hereafter acquired, and wherever located: (1) Fishing Vessel "BELLA SKY", Official Number 580932 (the "Vessel") including all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, furniture, tackle, fittings, tools, pumps, radar, loran, electronic equipment, radios, equipment and supplies, and any and all other appurtenances, accessories and additions, improvements and replacements now or hereafter belonging to the Vessel, whether or not removed therefrom, and all related Equipment, including all Accessions thereto, and all manufacturer's warranties therefor, and all parts and tools therefor, all engines, tackle and appurtenances, proceeds, profits and rents; (2) all Inventory, including all returned inventory, (3) all Equipment, including all Accessions thereto, and all manufacturer's warranties, parts and tools therefor; (4) all scallops, fish and other aquacultural products now or hereafter and however and wherever caught and/or harvested by the Vessel; (5) any warehouse receipts and bills of lading now or hereafter issued pertaining to scallops or fish now or hereafter and wherever and however caught and/or harvested by the Vessel; (6) all General Intangibles, including all Payment Intangibles, copyrights, trademarks, patents, tradenames, tax refunds, company records (paper and electronic), rights under equipment leases, warranties, software licenses and all Federal and state fishing permits, now or hereafter acquired, that are assigned, issued to or connected with the Vessel including but not limited to Massachusetts State Commercial Permit No. 006938, Virginia Flounder Permit No. 580932, and Northeast Federal Fishery Permit 330199 (and all species-specific permits associated therewith), , together with all amendments, supplements, renewals and/or replacements therefor; (7) all licenses, allocations, histories and quotas relating to the federal fishing rights in connection with the Vessel, including any renewals of such licenses, allocations, histories and quotas from time to time acquired by Debtor; (8) all supporting Obligations; (9) all proceeds (cash and non-cash) and Products of the foregoing collateral. All capitalized terms used herein that are not otherwise defined herein shall have the meanings assigned to them in the Uniform Commercial Code as adopted in the Commonwealth of Virginia.

(C) a Commercial Security Agreement dated September 27, 2019 made and executed between QUINBY ALLIE, LLC and Lender on collateral described as All of Debtor's rights, title and interests in the collateral described below, whether now owned or hereafter acquired, and wherever located: (1) Fishing Vessel "QUINBY ALLIE", Official Number 507438 (the "Vessel") including all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, furniture, tackle, fittings, tools, pumps, radar, loran, electronic equipment, radios, equipment and supplies, and any and all other appurtenances, accessories and additions, improvements and replacements now or hereafter belonging to the Vessel, whether or not removed therefrom, and all related Equipment, including all Accessions thereto, and all manufacturer's warranties therefor, and all parts and tools therefor, all engines, tackle and appurtenances, proceeds, profits and rents; (2) all Inventory, including all returned inventory, (3) all Equipment, including all Accessions thereto, and all manufacturer's warranties, parts and tools therefor; (4) all scallops, fish and other aquacultural products now or hereafter and however and wherever caught and/or harvested by the Vessel; (5) any warehouse receipts and bills of lading now or hereafter issued pertaining to scallops or fish now or hereafter and wherever and however caught and/or harvested by the Vessel; (6) all General Intangibles, including all Payment Intangibles, copyrights, trademarks, patents, tradenames, tax refunds, company records (paper and electronic), rights under equipment leases, warranties, software licenses and all Federal and state fishing permits, now or hereafter acquired, that are assigned, issued to or connected with the Vessel (and all species-specific permits associated therewith), , together with all amendments, supplements, renewals and/or replacements therefor; (7) all licenses, allocations, histories and quotas relating to the federal fishing rights in connection with the Vessel, including any renewals of such licenses, allocations, histories and quotas from time to time acquired by Debtor; (8) all supporting Obligations; (9) all proceeds (cash and non-cash) and Products of the foregoing collateral. All capitalized terms used herein that are not otherwise defined herein shall have the meanings assigned to them in the Uniform Commercial Code as adopted in the Commonwealth of Virginia.

(D) a Second Preferred Ship Mortgage dated September 27, 2019 made and executed between BELLA SKY, LLC and Lender on a vessel described therein.

(E) a First Preferred Ship Mortgage dated September 27, 2019 made and executed between QUINBY ALLIE, LLC and Lender on a vessel described therein.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**REQUIRED INFORMATION FOR A NEW LOAN.** To help the government fight the funding of terrorism and money laundering activities, federal law requires Lender to obtain, verify and record information that identifies each person or entity obtaining a loan including the Borrower's legal name, address, tax identification number, date of birth, driver's license, organizational documents or other identifying documents. Failure to provide the required information will result in a violation of the U.S. Patriot Act and will constitute a default under this instrument or agreement. In addition, none of the Borrower, any of its affiliates, or any of their respective directors, officers, managers, partners, or any other authorized

## PROMISSORY NOTE
**Loan No: 00002**                              **(Continued)**                              **Page 4**

representatives is named as a "Specially Designated National and Blocked Person", on the list published by the U.S. Department of the Treasury Office of Foreign Assets Control (OFAC) at its official website.

**BUSINESS PURPOSE.** This instrument is entered into for a business purpose, does not evidence or constitute a "consumer transaction", as defined in the Uniform Commercial Code, and none of the proceeds of the loan evidenced hereby have been or will be used for personal, family or household purposes.

**USURY SAVINGS CLAUSE.** It is the intention of Lender and Borrower to comply strictly with all applicable usury laws; and, accordingly, in no event shall Lender ever be entitled to charge, collect, or apply as interest any interest, fees, charges, or other payments equivalent to interest, in excess of the maximum rate which the Lender may lawfully charge under applicable state and federal statutes and laws from time to time in effect; and, in the event that Lender ever receives, collects, or applies as interest, any such excess, such amount which, but for this provision, would be excessive interest shall be applied to the reduction of the unpaid principal amount of the Note; and, if said principal amount and all lawful interest thereon is paid in full, any remaining excess shall be refunded to Borrower. All interest paid or agreed to be paid shall, to the maximum extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan, including any renewals, until payment in full of the principal. Any provision hereof, or of any other agreement between Lender and Borrower, that operates to bind, obligate, or compel Borrower to pay interest in excess of such maximum lawful contract rate shall be construed to require the payment of the maximum rate only. The provisions of this paragraph shall be given precedence over any other provision contained herein or in any other agreement between Lender and Borrower that is in conflict with the provisions of this paragraph.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**CHOICE OF VENUE.** Any legal action with respect to the Indebtedness evidenced by this instrument or agreement may be brought in the courts of the State/Commonwealth/District in which Lender's branch office set forth above is located or in the appropriate United States District Court situated in such State/Commonwealth/District, and Borrower hereby accepts and unconditionally submits to the jurisdiction of such courts. Borrower hereby waives any objection to the laying of venue based on the grounds of forum non conveniens with respect thereto.

**WAIVER OF JURY TRIAL. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW, EACH BORROWER AND LENDER, IF A PARTY HERETO, HEREBY WAIVES THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS INSTRUMENT OR AGREEMENT, ANY OF THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN ANY BORROWER AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN AND ENTER INTO THIS INSTRUMENT OR AGREEMENT. EACH BORROWER HEREBY CERTIFIES THAT NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. FURTHER, NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION.**

**NOTICES.** Any notice required to be given under this Note shall be given in writing, and shall be effective when actually delivered, when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Note. Any party may change its address for notices under this Note by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**SEVERABILITY.** If a court of competent jurisdiction finds any provision of this Note to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision, illegal, invalid, or unenforceable as to any other circumstances. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Note. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Note shall not affect the legality, validity of enforceability of any other provision of this Note.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Note.

**INTERPRETATION.** In all cases where there is more than one Borrower, then all words used in this Note in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Note or when this Note is executed by more than one Borrower, the words "Borrower" shall mean all and any one or more of them. The words "Borrower" and "Lender" include the heirs, successors, assigns, and transferees of each of them. Wherever possible, the provisions of this Note shall be interpreted in such a manner to be effective and valid under applicable law, but if any provision shall be determined to be invalid under such law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note. If any one or more of Borrower are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Note.

**UNIFORM COMMERCIAL CODE.** All references to the Uniform Commercial Code or UCC herein shall be to the Uniform Commercial Code as adopted by and under the laws of the jurisdiction governing this instrument or agreement.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. If "Borrower" consists of more than one party, the word "Borrower" as used in this Note shall refer to any one or more of the parties comprising "Borrower," and each of such parties shall be jointly and severally liable pursuant to this Note.

# PROMISSORY NOTE
## (Continued)

**Loan No: 00002**                                                                          **Page 5**

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE.  EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

QUINBY ALLIE, LLC

By: _____ (Seal)
    CHARLES MEADE AMORY, Member/Manager of
    QUINBY ALLIE, LLC


L. D. AMORY AND COMPANY, INCORPORATED

By: _____ (Seal)
    CHARLES MEADE AMORY, Vice-President of L. D.
    AMORY AND COMPANY, INCORPORATED


A & D FISHERIES, LLC

By: _____ (Seal)
    CHARLES MEADE AMORY, Member/Manager of A
    & D FISHERIES, LLC


BELLA SKY, LLC

By: _____ (Seal)
    CHARLES MEADE AMORY, Member/Manager of
    BELLA SKY, LLC

Signed, acknowledged and delivered in the presence of:

X_____
    Witness

X_____
    Witness

# EXHIBIT B

**FIRST PREFERRED SHIP MORTGAGE**

**Vessel: QUINBY ALLIE**

**(Official Number) 507438**

**Date: September 21 , 2019**

**Amount: $998,212.90**

THIS FIRST PREFERRED SHIP MORTGAGE, made by:

**QUINBY ALLIE, LLC** ("Owner"), a Virginia limited liability company whose address is 101 South King Street, Hampton, VA 23669, the sole owner of the whole of the vessel QUINBY ALLIE (Official Number 507438), to

**BRANCH BANKING AND TRUST COMPANY**, a North Carolina banking corporation, whose address is: 737 J. Clyde Morris Boulevard, 3rd Floor, Newport News, VA 23601, and its successors and assigns ("Mortgagee"), as follows.

W I T N E S S E T H :

THAT WHEREAS, Owner is the borrower, and Mortgagee is the lender, under that certain Loan Agreement dated of even date herewith, by and between Owner and Mortgagee (the "Loan Agreement"); and

WHEREAS, pursuant to the Loan Agreement, Mortgagee has made a term loan to Owner, which is evidenced by a promissory note dated of even date herewith (the "Note") made by Owner in the principal amount of **NINE HUNDRED NINETY EIGHT THOUSAND TWO HUNDRED TWELVE and 90/100 DOLLARS ($998,212.90)**, payable to the order of Mortgagee and further evidenced by certain additional "Loan Documents", as that term is defined in the Loan Agreement. All capitalized terms used in this Mortgage, but not otherwise defined herein, shall have the meanings ascribed to them in the Loan Agreement;

NOW, THEREFORE, in consideration of the foregoing recitals, the loan made pursuant to the Loan Documents, the promises made herein, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Owner hereby mortgages and conveys the whole of the following vessel (the "Vessel") to the Mortgagee, its successors and assigns to secure payment of all sums owed by Owner under the Note (including without limitation interest, late charges, attorney's fees, and other sums) and performance of Owner's obligations under the Note and the Loan Documents, as they may be amended, modified, supplemented, restated, and/or replaced.

| Vessel Name | Official Number |
|---|---|
| QUINBY ALLIE | 507438 |

The term "Vessel" shall include all of Owner's right, title and interest in and to all state and federal fishing permits issued to the Vessel by the National Marine Fisheries Service, at the time of this Mortgage and thereafter (and all species-specific permits associated therewith), together with all amendments, supplements, renewals and replacements thereof and thereto (collectively, the "Permit") and any and all of the following described items, now or hereafter belonging to the vessel or normally carried thereon, if any, all of which are subject to the security interest and lien of this Mortgage: all masts, spars, capstans, spare parts, towers, boilers, cables, engines, machinery, bowsprits, sails, rigging, auxiliary boats, anchors, chains, apparel, furniture, tackle, fittings, tools, pumps, pumping equipment, radar, electronic equipment, radios, other equipment and supplies, and any and all fishing and other appurtenances, accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed therefrom.

Except as may otherwise be stated herein, United States Code Title 46, Chapter 313, as amended, shall govern this Mortgage.

## I.     COVENANTS AND WARRANTIES OF OWNER

1.      Owner covenants, represents, and warrants to Mortgagee that:

1.1.    Owner is and shall remain a citizen of the United States entitled to own and operate the Vessel under its Certificate of Documentation and fishery and other operational endorsements, which Owner shall maintain in full force and effect; all actions necessary for the execution, delivery and validity of the Mortgage, the Note and other Loan Documents have been taken; Owner is duly organized as a Virginia limited liability company and is, and shall continue to be, in good standing under the laws of the Commonwealth of Virginia and in any other state where Owner does business; and Owner is authorized to execute the Note, the Loan Documents, and this Mortgage.

1.2.    Owner owns and possesses the Vessel free and clear from all liens and encumbrances and owns and possesses the Permit, free and clear of all liens or sanctions, and transferable under the existing National Marine Fisheries Service replacement provisions and transfer requirements. Owner shall warrant and defend title to and possession of the Vessel, including the Permit, for the benefit of Mortgagee against all other persons and entities. Owner shall not set up any claim of ownership of the Vessel, including the Permit against Mortgagee. If the Vessel is subject to a casualty, Owner shall take all actions requested by Mortgagee to transfer the Permit to a replacement vessel on which Mortgagee has a first preferred ship mortgage on the terms of this Mortgage, or take such other action as may be requested by Mortgagee to protect its security interest in the Permit.

1.3.    Owner shall comply with, and not permit the Vessel to be operated contrary to, the laws, treaties, conventions, rules, regulations or orders of the United States, and any state or jurisdiction where they are operated, nor remove the Vessel from the territorial limits of the United States, nor abandon the Vessel in any foreign port. Owner shall maintain the Permit in full force and effect, free and clear of all liens and sanctions and transferable under existing

National Marine Fisheries Service replacement provisions and transfer requirements. Owner shall do everything necessary to establish and maintain this Mortgage as a First Preferred Ship Mortgage on the Vessel. Owner shall comply with, and not permit the Vessel to be operated contrary to, any navigation limits and other requirements of the insurance carried on the Vessel.

1.4.    Owner (a) agrees to be bound by the provisions of the Mortgage, the Note, and the Loan Documents; (b) consents to being joined, if necessary for complete relief to be granted, in any enforcement action on the Note or Mortgage, or under the Loan Documents, and (c) acknowledges that the Mortgagee is loaning or disbursing funds on the condition that the Note and Loan Documents are validly executed and secured by this Mortgage.

1.5.    Owner, by executing this Mortgage, by receiving money loaned from Mortgagee, by having actual knowledge when executing the Note and other Loan Documents that the Mortgagee intends to secure the Note with this Mortgage, and/or by having such knowledge at any time and not promptly notifying the Mortgagee in writing by certified mail that the Owner did or does not consent to this Mortgage, hereby agrees to this Mortgage.

1.6.    Owner gives Mortgagee the right, upon the occurrence of an "Event of Default", as defined herein, to arrest and repossess the Vessel wherever it may be found and sell it, and if, after deducting from the proceeds of sale all amounts due Mortgagee under the Note or other Loan Documents, including but not limited to costs and attorneys' fees incurred in arresting, repossessing, storing, protecting, and selling the Vessel and costs of cleaning, transporting, commissions, repairs, reconditioning, new equipment, storage and dockage fees, and all other costs determined by Mortgagee, in its reasonable discretion, to be in its interests to incur, there is a deficiency, in that the proceeds are insufficient to pay Mortgagee all amounts due to it, Mortgagee may sue Owner for the deficiency in any appropriate state or federal court and in the event of suit, recover any costs and attorneys' fees it incurs in such suit and any costs and attorneys' fees previously mentioned in this paragraph.

1.7.    Neither Owner, nor Owner's agent or masters of the Vessel, has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the Vessel any lien other than to Mortgagee or for crew's wages or salvage, without Mortgagee's written consent. Owner shall keep prominently posted on the Vessel, a U. S. Coast Guard certified copy of this Mortgage and a notice that the Vessel is subject to a Mortgage in favor of Mortgagee, that no liens may be placed upon the Vessel without the written permission of Mortgagee, and that the Vessel may not be leased to or chartered by any third party without Mortgagee's prior written consent, which consent shall not be unreasonably withheld. Owner will also promptly cause a copy of this Mortgage, certified by the U. S. Coast Guard, to be kept on the Vessel and in the office of Owner from which the Vessel is chartered, available for inspection, and will exhibit the same and with the Vessel's papers upon demand to any person having business with the Vessel. Owner will take such other appropriate steps from time to time as will give notice to the world that Owner's right, title and interest in and to the Vessel is subject to this Mortgage, and that, except for this Mortgage and the other Loan Documents, Owner has no right, power or authority to suffer or permit any liens or claims against the Vessel.

1.8.    Owner shall pay when due all taxes, assessments, license fees, governmental charges, fines and penalties imposed upon the Vessel and promptly discharge any and all liens and claims upon the Vessel. Owner shall at all times keep the Vessel in good repair, appearance and working order. If on the date of this Mortgage the Vessel has an ABS Classification Certificate and/or Load Line Certificate, Owner shall take all action necessary to maintain the Vessel's current ABS Classification, and Owner shall maintain the Vessel according to its standards, including all repairs, replacements, and dry-dockings. Owner shall take all action necessary to maintain the Vessel's Load Line Certificate, and Owner shall maintain the Vessel according to its standards, including all repairs, replacements, and dry-dockings. Owner will provide the Mortgagee with copies of the renewals of the ABS Classification and the Load Line Certificate.

1.9.    If the Vessel shall be libeled, arrested, attached, detained or repossessed by any third party, seized or levied upon or taken into custody under process or under color of liens and claims upon the Vessel, Owner shall immediately notify Mortgagee, confirmed in writing, by letter sent by certified mail and discharge or release, and recover the Vessel within twenty (20) days.

1.10.    Owner shall at all reasonable times afford Mortgagee complete opportunity to inspect the Vessel and immediately upon request by Mortgagee, Owner shall state the exact location of the Vessel. Owner shall promptly, and in any event when due, pay all charges for repairs or other services to the Vessel, goods, supplies, wages, fuel, dockage, storage fees, or any other necessaries, not disputed, within thirty (30) days to the creditor, with immediate written notice of any such disputed amount sent to Mortgagee. Owner shall promptly inform Mortgagee in writing whenever the total of undisputed charges for the above items not paid within thirty (30) days after the due date exceeds Five Thousand and 00/100 Dollars ($5,000.00). Owner shall also notify Mortgagee promptly of any collision, allision, or other accident in which the Vessel is involved, or of damage to the Vessel that requires repair or which may affect its value.

1.11.    Owner shall not, without the prior written consent of Mortgagee, sell, transfer, or mortgage the Vessel, or any interest in the Vessel, or merge or consolidate with any other person, firm or corporation, or dissolve.

1.12.    From time to time, Owner shall execute and deliver such other instruments and assurances as Mortgagee may require to perfect or continue this Mortgage and to enforce the terms of this Mortgage, the Note, or other Loan Documents, for operation of the Vessel, or sale of the Vessel by Mortgagee upon the occurrence of an "Event of Default" as defined below.

## II.    INSURANCE

2.1    Owner shall, at its expense, keep the Vessel fully insured under a marine insurance policy or policies providing (1) hull and machinery coverage in an amount not less than the full market value of the Vessel; (2) protection and indemnity coverage in the standard form and amounts acceptable to Mortgagee; (3) collision liability coverage; (4) Jones Act, workers compensation and employers' liability coverage if not included in the Protection and Indemnity coverage; (5) Oil Pollution Act liability coverage in an amount not less than One Million Dollars ($1,000,000.00), (6) CERCLA environmental/pollution liability coverage in an amount not less

than Five Million and 00/100 Dollars ($5,000,000.00), and (7) such further risks as may be commercially reasonable or reasonably specified by Mortgagee from time to time.

2.2    The hull and machinery policy shall provide that losses payable under the policy shall be paid to Mortgagee, its successors and assigns, and shall include a Breach of Warranty endorsement in favor of Mortgagee, protecting Mortgagee's interest in an amount not less than the full market value of the Vessel, which interest shall not be impaired or invalidated by any breach of a warranty or condition under the policy, other than a change in title or ownership of the Vessel.

2.3    The policies shall include all additional endorsements or coverages reasonably specified by Mortgagee. All such policies shall be taken in Owner's name, shall identify Mortgagee as an additional insured, and shall be in amounts or policy limits subject to Mortgagee's approval unless the amounts or policy limits are otherwise specified herein. Owner shall notify, and Owner and/or Mortgagee shall request all insurers and their agents to agree to notify Mortgagee, at least twenty (20) days in advance, of any cancellation or material change in any insurance coverage. Certified copies of policies and binders shall be delivered to Mortgagee with satisfactory evidence that all premiums and charges have been paid. Owner shall maintain such insurance unimpaired by any act, breach of warranty or otherwise, during the life of this Mortgage. Mortgagee may at any time request proof from the Owner that the insurance is in force. Failure by Owner to furnish proof within seven (7) days of receiving a request from Mortgagee shall constitute an "Event of Default" as defined below, and, in addition to any other rights or remedies, Mortgagee shall have the option, but shall not be required, to procure such insurance at Owner's sole cost and expense, to be paid by Owner upon demand by Mortgagee.

## III.    DEFAULT

3.1.    Any one or more of the following events shall be an "Event of Default":

(a)    **Payment Defaults**. If any payment due on the Note or under the other Loan Documents is not made when due.

(b)    **Other Defaults**. Owner's failure to comply with or to perform any term, obligation, covenant or condition in this Mortgage, the Note, other Loan Documents, or any other agreement between the Owner and Mortgagee.

(c)    **Insolvency**. The dissolution, merger, consolidation or termination of Owner's existence as a going business, Owner's insolvency or inability to pay debts as they mature, the appointment of a receiver for Owner's property, any assignment for the benefit of creditors, or the commencement of any processing under any bankruptcy or insolvency laws by or against Owner (except as creditor of a third party).

(d)    **Creditor or Forfeiture Proceedings**. The entry of a judgment against Owner, or the commencement of foreclosure or forfeiture proceeding, repossession, or any other act by any creditor of Owner or by any governmental agency, against the

Vessel or any collateral securing the indebtedness, including garnishment of any of Owner's deposit accounts with Mortgagee; provided, however, the foregoing shall not apply to garnishment against third-parties from Owner's operating account.

(e) **Breach of Warranties**. The breach of any of Owner's covenants, representations or warranties in this Mortgage, the Note, or other Loan Documents.

(f) **Deterioration of Vessel**. Any deterioration or impairment of the Vessel or any depreciation in the value of the Vessel, which causes the Vessel, in the reasonable judgment of Mortgagee, to become unsatisfactory as to value. Mortgagee may from time to time require that the Vessel be surveyed and appraised, and Owner shall cooperate with Mortgagee's surveyor to permit access to, and inspection of, the Vessel. Each survey and appraisal shall be performed at Owner's sole cost and expense; provided, however, Owner shall not be obligated to pay the cost of surveys or appraisals performed more frequently than once every two (2) years.

(g) **Fraud or Misrepresentation**. Owner commits fraud or makes a material misrepresentation, or omits to disclose facts necessary to keep any representation made from misleading, at any time in connection with this Mortgage or the Note.

Notwithstanding the foregoing, if Owner has not been given more than one (1) notice of the same breach or default within the preceding twelve (12) months, the breach or default may be cured (and no Event of Default shall be deemed to have occurred) if Owner, after written notice from the Mortgagee to Owner demanding cure of such default: (i) cures the default within seven (7) days if it is a payment default and (ii) thirty (30) days if it is a default other than a payment default. The Owner's right to cure, however, shall not apply to (a) default of Owner's obligation to insure the Vessel, (b) defaults which are not susceptible to cure (such as without limitation a report, certificate or financial information statement or incorrect representation or warranty which is false or misleading), (c) default in payment at maturity, (d) appointment of a receiver or other custodian of the Owner's or guarantor's assets, (e) sale or other transfer of the Vessel, (f) a lien on the Vessel other than allowed by the Loan Documents, (g) financial reporting requirements, or (f) defaults for which cure periods are already stated. Further, if during any cure period the Mortgagee's collateral or lien priority is threatened, the Mortgagee may take reasonable actions at the Owner's expense to protect the Mortgagee's interests.

3.2. If an Event of Default occurs in addition to any other rights and remedies provided to Mortgagee under applicable law, the Note or other Loan Documents, Mortgagee may:

(a) Accelerate and declare immediately due and payable all the unpaid principal, accrued interest, any late charges, and, as permitted by applicable law, any other amounts due under the Note, the other Loan Documents, or this Mortgage, after which these amounts shall earn interest at the default rate of interest provided in the Note. Any arrest and repossession of the Vessel by Mortgagee, or suit on the Mortgage, Note, or other Loan Documents or other action taken by Mortgagee authorized in (b) through (e) below, shall also constitute such a declaration by

Mortgagee, even if no such declaration, or demand for payment, has been made previously to Owner.

(b)   Bring suit in federal or state court against the Vessel and/or Owner, and in such action, recover all costs of suit, including reasonable attorneys' fees. Owner consents to the appointment of a substitute custodian selected by Mortgagee. Mortgagee may also obtain appointment of a receiver for the Vessel. Mortgagee may at any time dismiss any action and take possession of the Vessel and exercise all powers given under this Mortgage, including those given in section (d) below.

(c)   Recover judgment for any amounts due and collect it out of the property of Owner.

(d)   In addition to all other remedies provided, repossess the Vessel without legal process, or use state legal process to do so, at any time, wherever the Vessel may be, and, without being responsible for loss or damage, hold and in Mortgagee's or Owner's name, sell, lease, charter, operate, transfer, or otherwise use the Vessel for the time and upon the terms as Mortgagee deems advisable. Mortgagee may sell the Vessel free from any claim by Owner, and the sale may include the Permit and all appurtenances on board the Vessel at the time it or they are retaken by Mortgagee or normally on board but removed by Owner; provided, however, Mortgagee shall not have any rights in or to any cargo on board the Vessel. If Mortgagee elects, repossession and sale may take place under state law and this Mortgage shall not be used to prevent election to use state law remedies. To the extent permitted by law, the sale may be public or private, with at least twenty-one (21) days prior written notice to Owner, without having the Vessel present, and Mortgagee may be the purchaser and for payment may pay all or part of the indebtedness secured by this Mortgage. Owner agrees that it will cooperate fully to permit peaceful repossession, and will disclose promptly the exact location of the Vessel to permit Mortgagee to obtain possession of any or all of them.

(e)   For purposes of dealing with the Vessel following any Event of Default, Mortgagee and its agents are irrevocably appointed the true and lawful attorneys of Owner in Owner's name and stead for all purposes, including but not limited to selling the Vessel and doing all things (including execution of documents) necessary to the sale and to protect Mortgagee's interest in the Permit.

3.3.   If an Event of Default occurs, Owner and any other person aboard the Vessel shall immediately leave the Vessel upon the oral or written request of Mortgagee, and shall leave the Vessel in good, clean and neat condition. If the Vessel is arrested or detained by any officer of any Court or by any authority, Owner hereby authorizes Mortgagee, its agents and appointees, to receive or take possession of the Vessel, load and/or discharge cargo, and to defend any action or discharge any lien. All expenses incurred by Mortgagee as a result of such action shall be added to the indebtedness secured by this Mortgage. If the Mortgagee pays any lien or claim, this shall be an Event of Default by Owner, and Mortgagee may immediately enter on and use the Vessel as it sees fit and this shall be regarded as a lawful repossession.

3.4.    Each and every power or remedy given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as deemed necessary by Mortgagee. No delay or omission by Mortgagee shall impair any right, power or remedy, and no waiver of any default shall waive any other default.

3.5.    Mortgagee may apply the net proceeds of any judicial or other sale, and any charter, management, operation or other use of the Vessel by Mortgagee, of any claim for damages, of any judgment, and of any insurance proceeds received by Mortgagee (except to the extent paid to Owner or applied in payment or repairs or otherwise for Owner's benefit) (hereinafter "Proceeds") as follows:

> FIRST: to the payment of all reasonable attorneys' fees, court costs, and any other expenses, losses, charges or damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default with interest at the default rate of interest in effect hereunder, and to provide adequate indemnity against any liens claiming priority over this Mortgage.

> SECOND: to the payment of all interest (including any interest accruing at the default rate of interest), to date of payment, on the Note and any or all sums secured by this Mortgage, and to any balances of such proceeds to the payment next of all matured installments of principal and then of all unmatured installments or principal in the inverse order of their maturity.

If, after deducting from the Proceeds the amounts above, there is a deficiency, Mortgagee may collect the deficiency from the Owner and, in doing so, may apply, without prior notice, any deposits or other assets of the Owner to payment of the deficiency.

3.6.    All advances and expenditures which Mortgagee in its reasonable discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose related to this Mortgage, the Note or under the Loan Documents, and all damages sustained by Mortgagee because of a default, shall be paid by Owner on demand or, at Mortgagee's option, shall be added to the unpaid balance of the Note and paid by Owner. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall their making relieve Owner of any obligation or default related to the advances or expenditure.

## IV.    POSSESSION UNTIL DEFAULT

Until an Event of Default occurs, Owner shall be permitted to retain actual possession and use of the Vessel.

## V.    MISCELLANEOUS PROVISIONS

5.1.    Time is material and of the essence in this Agreement. Mortgagee waives no rights by accepting late or partial payments, or by delaying enforcing any of its rights hereunder. No

changes, additions, or deletions in any terms shall be valid unless signed by an authorized officer of Mortgagee.

5.2.    Any provisions deemed invalid under any law, rule or regulation of any governmental agency shall not affect any other provision hereof.

5.3.    This Mortgage is additional security given to Mortgagee as incentive to advance funds under the Note and pursuant to the terms of the other Loan Documents.

5.4.    This Mortgage shall be governed according to the laws of the United States and the Commonwealth of Virginia, without reference to any law regarding choice of law.

5.5.    Nothing shall be construed to impose any obligation on Mortgagee to extend, or continue to extend, any credit at any future time.

As of this date first written above, Owner has caused this Mortgage to be executed in its name by a person authorized to do so.

**QUINBY ALLIE, LLC**

By: _____ (SEAL)
    C. Meade Amory, Manager

COMMONWEALTH OF VIRGINIA,
CITY/COUNTY OF  Newport News

On this 27th day of September 2019, before me, a notary in and for the State and City or County aforesaid, personally appeared C. Meade Amory, Manager of QUINBY ALLIE, LLC, who is personally known to me or who has produced _____ as identification, and executed foregoing instrument, on behalf of said corporation.

_____
Notary Public

Notary Registration Number: 7175047

My Commission Expires: April 30 2020

STAMP

ARETHEA V. WALKER
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES APR 30, 2020
COMMISSION # 7175047

4831-6541-5592, v. 1

Page 9

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS

Truist Bank

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Thomas J. Muzyka, Clinton & Muzyka, P.C., 1 India Street, Suite 200, Boston, MA 02109  (617) 723-9165

### DEFENDANTS

F/V QUINBY ALLIE (O.N. 507438) its engines, tackle, gear, and appurtenances, In Rem

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [x] 890 Other Statutory Actions |
| | | | | [ ] 863 DIWC/DIWW (405(g)) | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
46 U.S.C. §31321

Brief description of cause:
In Rem action for the arrest of the F/V QUINBY ALLIE concerning foreclosure of preferred ships mortgage, ...

### VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 878,098.38 plus accumulated interest and costs

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

### VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE  May 20, 2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)  Truist Bank vs. F/V QUINBY ALLIE (O.N. 507438) its engines, gear and
   appurtenances, In Rem

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local
   rule 40.1(a)(1)).

   [ ]    I.    160, 400, 410, 441, 535, 830*, 835*, 850, 891, 893, R.23, REGARDLESS OF NATURE OF SUIT.

   [ ]    II.   110, 130, 190, 196, 370, 375, 376, 440, 442, 443, 445, 446, 448, 470, 751, 820*, 840*, 895, 896, 899.

   [✔]   III.  120, 140, 150, 151, 152, 153, 195, 210, 220, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362,
               365, 367, 368, 371, 380, 385, 422, 423, 430, 450, 460, 462, 463, 465, 480, 490, 510, 530, 540, 550, 555, 560, 625,
               690, 710, 720, 740, 790, 791, 861-865, 870, 871, 890, 950.

            *Also complete AO 120 or AO 121. for patent, trademark or copyright cases.

3. Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this
   district please indicate the title and number of the first filed case in this court.

   n/a

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]   NO [✔]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC
   §2403)
   YES [ ]   NO [✔]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]   NO [✔]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]   NO [✔]

7. Do all of the parties  in this action, excluding governmental agencies of the United States and the Commonwealth of
   Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? -  (See Local Rule 40.1(d)).
   YES [ ]   NO [✔]

   A.   If yes, in which division do all of the non-governmental parties reside?
        Eastern Division [ ]        Central Division [ ]        Western Division [ ]

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,
        residing in Massachusetts reside?
        Eastern Division [✔]        Central Division [ ]        Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes,
   submit a separate sheet identifying the motions)
   YES [ ]   NO [✔]

**(PLEASE TYPE OR PRINT)**
ATTORNEY'S NAME  Thomas J. Muzyka and John J. Bromley, Clinton & Muzyka, P.C.
ADDRESS  Board of Trade Building, One India Street, Suite 200, Boston, MA  02109
TELEPHONE NO.  (617) 723-9165

(CategoryForm1-2019.wpd )