**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**TROY D. DWYER,**

      Plaintiff,

v.                                                            CIVIL NO.:  4:21-CV-00037-RAJ-RJK

**C. MEADE AMORY**, et als,

      Defendants.

**DEFENDANT'S ANSWER AND COUNTERCLAIM**
**TO PLAINTIFF'S AMENDED COMPLAINT**

COMES NOW the defendant, C. Meade Amory, individually and derivatively on behalf of Quinby Allie, LLC, and Bella Sky, LLC, by counsel, and submits his Answer to the Amended Complaint of Troy D. Dwyer, stating as follows:

1.      Admitted.

2.      The defendant is unable to confirm or deny the address of the plaintiff's personal residence and admits only that Mr. Dwyer is, at present, a member of the Virginia entities Quinby Allie, LLC (hereinafter "QALLC"), and Bella Sky, LLC (hereinafter "BSLLC").

3.      Upon information and belief, the description of co-defendant L. D. Amory  and Company Incorporated's (hereinafter "LDA") legal status as a Virginia corporation and its corporate location is correctly stated.

4.      Upon information and belief, the general description of the co-defendant's business includes, but is not limited to, the asserted activities.

5.      Admitted only that Mr. Amory is an officer of LDA and a member of QALLC and BSLLC. The remaining averments and  are denied as pled and strict proof thereof demanded.

6.      Upon information and belief, the description of co-defendant Mrs. Quinby J. Amory is correctly stated.

7.      With respect to the claims against co-defendant C. Meade Armory and the derivative actions on behalf of QALLC and BSLLC, the supplemental and pendant jurisdiction of this Honorable Court is disputed. Mr. Amory is included in the admiralty claims only as a pretext to enable the state law issues to be reviewed in this forum. The remaining averments and conclusions of law are denied as pled with strict proof thereof demanded.

8.      With respect to the declaratory relief sought against co-defendant C. Meade Armory and the derivative actions on behalf of QALLC and BSLLC, it is an inappropriate use of the declaratory process as the rights and obligations of the parties are clear both under the controlling documents and state law. Any resulting proscriptive relief would be speculative. Specifically, the liquidation of the LLC interests is a process anticipated and controlled by state law and the organizational documents of the limited liability companies. The remaining averments and conclusions of law are denied as pled with strict proof thereof demanded.

9.      Denied. This averment is an incorrect conclusion of law to which a response is not required. Mr. Dwyer and Mr. Amory were members in the entities with equal control and responsibility under the operating agreements and Virginia authority. Further, the averment regarding a member's personal actions and duty to the entity under Virginia authority is incorrectly stated, therefore denied and strict proof demanded.

10.     Denied.

11.     Denied. This averment is an incorrect conclusion of law to which a response is not required. The averment regarding a member's personal actions and duty to the entity under Virginia authority is incorrectly stated, therefore denied and strict proof demanded.

2

12.     Denied. This averment is a selective restatement and conclusion of law to which a response is not required.

13.     BSLLC was formed effective July 31, 2014 per the operating agreement. The Complaint refers to certain controlling documents and the information contained within the "four-corners" speaks for itself. Any averred interpretations of the documents are specifically denied, and strict proof thereof are demanded.

14.     QALLC was formed effective May 23, 2019 per the operating agreement. The Complaint refers to certain controlling documents and the information contained within the "four-corners" speaks for itself. Any averred interpretations of the documents are specifically denied, and strict proof thereof are demanded.

15.     Denied as stated. The books and records of the BSLLC and QALLC were maintained, by agreement of the members, at LDA as the LLCs had no administrative staffing.

16.     Denied as stated. The maintenance oversight function with respect to the LLC assets was delegated to Mr. Dwyer, at the cost of the LLC, by agreement of the members.

17.     Denied as stated. The books and records of the BSLLC and QALLC were maintained, by agreement of the members, at LDA as the LLCs had no administrative staffing.

18.     Denied.

19.     Denied as stated. The complaint refers to certain controlling documents and the information contained within the "four-corners" speaks for itself. Any averred interpretations of the documents are specifically denied, and strict proof thereof are demanded.

20.     Denied as stated. The complaint refers to certain controlling documents and the information contained within the "four-corners" speaks for itself. Any averred interpretations of the documents are specifically denied, and strict proof thereof are demanded.

21.     Denied. Further, there is a distinction between reimbursement of personal expenditures and the general operational costs of the business per the respective operating agreement

22.     Denied.

23.     Denied. Further, this division of duties was consistent with the written operating agreement and the agreement of the members as to this division of duties.

24.     Denied as stated. This is an oversimplification of the business purpose and use of the LLC assets. The vessels and their respective fishing licenses developed intrinsic values sometimes greater that the speculative profit to be gained by fishing.

25.     Denied as speculative and not consistent with actual operations of the vessels.

26.     Denied as stated. Each catch did have an allocation of net return to the captain and crew, but this calculation did not factor in the operational and financing costs of the vessels. By agreement of the members, an employee of LDA was paid independently for making these calculations of each "catch" upon request.

27.     Denied as stated. The complaint refers to certain controlling documents such as the operating agreement, and the information contained within the "four-corners" speaks for itself. Any averred interpretations of the documents are specifically denied, and strict proof thereof are demanded.

28.     Denied as stated. The complaint refers to certain controlling documents such as the operating agreement and the information contained within the "four-corners" speaks for itself. Any averred interpretations of the documents are specifically denied, and strict proof thereof are demanded. Further, this self-serving statement ignores the fact that not every vessel is profitable at all times.

29.     Admitted as to the ownership and purchase of the vessels, but the other averments are denied as pled and strict proof thereof demanded.

30.     Admitted as to the ownership and purchase of the vessels, but the other averments are denied as pled and strict proof thereof demanded.

31.     Admitted as to the use of the vessels for purposes of for-profit commercial fishing.

32.     Admitted.

33.     Admitted.

34.     Admitted subject to the controlling documents, and the information contained within the "four-corners" that speaks for itself. Any averred interpretations of the documents are specifically denied, and strict proof thereof are demanded.

35.     Admitted only that Dwyer was responsible for the readiness preparation, on behalf of the LLC, of the vessel. However, the excessive costs and related expenditures were not within the scope of the approval.

36.     Admitted that the vessel began fishing on or about June 12, 2017, but the other averments are denied as pled and strict proof thereof demanded.

37.     Denied as stated. The vessels concomitant with their respective mandatory fishing licenses developed intrinsic values sometimes greater than the speculative profits (or losses to ownership)  to be gained by fishing.

38.     Admitted.

39.     Admitted only as the need for a replacement vessel, but the other averments are denied as pled and strict proof thereof demanded.

40.     Admitted only that Mr. Dwyer was to captain; for profit, a boat for a different ownership group, but the other averments are denied as pled and strict proof thereof demanded.

41.     Denied as stated. The BSLLC vessel was not fished extensively, with Mr. Dwyer splitting his time with other vessels.

42.     Denied as stated. The stated actions were not for the benefit of BSLLC nor QALLC, but for that of Mr. Dwyer's personal enrichment.

43.     Admitted.

44.     Admitted.

45.     Admitted as to purchase intentions, however the debts of A&D Fisheries, LLC were encompassed within the purchase costs of the new vessel.

46.     Admitted subject to the controlling documents, and the information contained within the "four-corners" that speaks for itself. Any averred interpretations of the documents are specifically denied, and strict proof thereof are demanded .

47.     Admitted as to the intention to purchase and the renaming of the vessel, however the costs of retrofitting were not fully disclosed by Mr. Dwyer prior to the purchase.

48.     Admitted as to the intention to purchase the vessel, however the crew and Mr. Dwyer were paid from advances to the entities for this time period and incurred, *inter alia*, exorbitant and improper charges that were not withing the scope of the approved retrofit.

49.     Denied as stated. The defendant lacks the knowledge and/or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 based on the loose usage of the term "work" and the LLC's related business goals.

50.     Denied as stated. Mr. Dwyer was responsible for the delay in the retrofit and he and the Crew were paid by the LLC for this "down-time".

51.     Denied as stated. The vessels and their respective fishing licenses developed intrinsic values sometimes greater that the speculative profit to be gained by fishing.

52.     Denied as stated.

53.     Denied as stated. The delay was, in part, due to Mr. Dwyer's personal actions.

54.     Admitted only as to the vessel's retrofit.

55.     Admitted.

56.     Denied as stated. The defendant lacks the personal knowledge to confirm or deny the averment, therefore it must be denied, and strict proof thereof is demanded.

57.     Denied.

58.     Denied as stated.

59.     Denied as stated.

60.     Denied as stated. In June of 2020, Mr. Dwyer stated he was no longer interested in working with Mr. Amory and wanted to terminate the business operations and acquire Mr. Amory's membership position.

61.     Denied as stated. Mr. Amory never offered to relinquish his interests for the amount of $200,000, itself a ridiculously low amount in comparison to the value of the vessels and permits. Further, Mr. Dwyer advised that he had a new partner in the ventures.

62.     Denied as stated. Mr. Amory; in speaking with Town Dock, was advised of the true value of the vessels and permits, a multiple of Mr. Dwyer's valuations and offer.

63.     Denied as stated. Mr. Amory made the mortgage holder aware that LDA had advanced certain funding as needed for the payments not provided by the operations of the vessels. This was in the context of advising BB&T Bank that Mr. Dwyer had not provided a firm offer not identified his new partner to Mr. Amory.

64.     Denied as stated. The conversation was not as described and was instead an attempt to belittle or intimidate Mr. Armory into a below value transfer of the vessels. Mr. Dwyer's daughter was present for the conversation.

65.     Denied as stated. Mr. Dwyer never produced a written offer, demonstrated the ability to complete the acquisitions, nor provide the identity of his partner in the new ventures.

66.     Denied as stated. After notice to Mr. Dwyer, the business charge cards were suspended due to a review and investigations into unapproved personal expenses and related discrepancies.

67.     Denied. Mr. Dwyer was provided the statements for this balance and payments.

68.     Admitted as to the notice, and the information contained within the "four-corners" that speaks for itself. Any averred interpretations of the documents are specifically denied, and strict proof thereof are demanded.

69.     Denied that Mr. Dwyer was without notice, supporting documents and the ability make further inquiries as needed.

70.     Admitted as to the notice, and the information contained within the "four-corners" that speaks for itself. Any averred interpretations of the documents are specifically denied, and strict proof thereof are demanded.

71.     Denied as stated.

72.     Denied as stated.

73.     Denied as stated. Mr. Amory an Mr. Dwyer were intimately aware of the financing of the ventures and discussed these arrangements on several occasions with respect to selling their interests.

74.     Denied as stated. Mr. Amory an Mr. Dwyer were intimately aware of the financing of the ventures and discussed these arrangements on several occasions with respect to selling their interests.

75.     Denied as stated. The grossly oversimplified profit after direct expenses does not have any relationship to the LLC's expenses of ownership such as the mortgage, insurance, and taxation. To the extent a further response is required, this averment is denied, and strict proof thereof demanded.

76.     Denied as stated. The grossly oversimplified profit after direct expenses does not have any relationship to the LLC's continuing expenses of ownership such as the mortgage, insurance, and taxation not to mention the subsistence payments demanded by Mr. Dwyer. To the extent a further response is required, this averment is denied, and strict proof thereof demanded.

77.     Denied as stated.

78.     Denied as stated.

79.     Denied as stated, and the information contained within the "four-corners" that speaks for itself. Any averred interpretations of the documents are specifically denied, and strict proof thereof are demanded.

80.     Denied as stated, and the information contained within the "four-corners" that speaks for itself. Any averred interpretations of the documents are specifically denied, and strict proof thereof are demanded. Specifically, the obligation to LDA was its corporate decision and not Mr. Amory's personal action.

81.     Denied as stated. Upon information and belief., Mr. Dwyer took these actions for his personal benefit.

82.     Denied as stated.  Mr. Amory's personal interests and that of the corporation are distinct under Virginia authority. The defendant lacks the knowledge and/or information sufficient to form a belief as to the truth of the allegations and conclusion of law in Paragraph 82, and therefore denies the same and demands strict proof thereof.

83.     Upon information and belief, Mrs. Amory did endorse the documents presumably upon the basis of documents, records, and legal advice available to her.

84.     The self-serving averment is denied, and strict proof demanded.

85.     Denied as stated, and the information contained within the "four-corners" of the referenced documents speaks for itself. Any averred factual inferences or interpretations of the documents are specifically denied, and strict proof thereof are demanded.

86.     Denied.

87.     Denied as stated.

88.     Denied.

89.     Denied.

90.     Denied.

91.     Denied.

92.     Denied. Upon information and belief, Mr. Dwyer and Mrs. Amory had discussions regarding the debt owed to LDA, with Mr. Dwyer assuring her the obligations would be repaid.

93.     Denied as stated.

94.     Denied as stated, and the information contained within the "four-corners" of the referenced documents speaks for itself. Any averred factual inferences or interpretations of the documents are specifically denied, and strict proof thereof are demanded.

95.     Denied as stated, and the information contained within the "four-corners" of the referenced documents speaks for itself. Any averred factual inferences or interpretations of the documents are specifically denied, and strict proof thereof are demanded.

96.     Denied as stated. Mr. Amory was not privy to that conversation as averred, and demands strict proof thereof.

97.     The allegations, assumptions and flawed inferences are denied as stated, and strict proof demanded thereof. Further, the books and records of the entities speak for themselves as to the business purpose and obligations as averred. Further, the "duties" as averred are not those of the LLC members to the entity, nor arise independently from the relationships.  Upon information and belief, LDA has engaged an independent accountant to review and reconcile the accounts for the benefit of the entities.

98.     Denied.

99.     Denied.

100.    Denied.

101.    Denied.

102.    Denied.

103.    Denied.

104.    Denied.

105.    Denied.

106.    Denied.

107.    Admitted as to the filing of Truist's Complaint.

108.    Admitted as to the filing of Truist's Complaint.

109.    Admitted as to the arrests of vessels.

110.    Defendant Amory denies the allegation in paragraph 110 to the extent he has any such knowledge of this assertion.

111.    Denied as stated.

112.    Denied as stated. The defendant lacks the personal knowledge to confirm or deny the averment, therefore it must be denied, and strict proof thereof is demanded.

113.    Denied as stated. The defendant lacks the personal knowledge to confirm or deny the averment, therefore it must be denied, and strict proof thereof is demanded.

114.    Denied as stated. The defendant lacks the personal knowledge to confirm or deny the averment, therefore it must be denied, and strict proof thereof is demanded.

115.    Admitted as to the notice.

116.    Admitted as to the notice.

117.    Admitted.

118.    Admitted as only to the amounts of the bid, any other conclusory statement is denied.

119.    Admitted as only to the amounts of the bid, any other conclusory statement is denied.

120.    Admitted as to the procedural history of the action.

121.    Denied.

122.    Denied.

123.    Denied.

124.    Denied.

125.    Denied. Further, the flawed conclusions of law regarding corporate formalities and duty under Virginia authority is misleading.

126.    Denied.  Further, the flawed conclusions of law regarding corporate formalities and duty under Virginia authority is misleading.

## COUNT ONE

127.    In response to Paragraph 127, Mr. Amory incorporates his responses *supra* to the previous paragraphs of the Complaint and the allegations contained therein.

128.    Admitted as to the filing of the documents, which speak for themselves. To the extent a further response is required, the averment is denied.

129.    Denied.

130.    Denied.

131.    Denied and supported by an incorrect conclusion of law. A portion of the amounts due were necessities under accepted maritime authority and therefore supported by the LDA actions.

132.    Denied as to the impropriety of Mrs. Amory's statements made at the direction of counsel.

133.    Denied as stated.

134.    Denied as stated.

135.    Admitted as to the filing of the documents, seizure and release of the vessels by LDA, under the advice of counsel. To the extent a further response is required, the averment is denied.

136.    Denied as stated.

137.    Denied as to the veracity of content, supporting facts and import of the plaintiff's own memorandum in support of its positions. To the extent a further response is required, the averment is denied.

138.    Denied. The prior vessel's debt was part of the purchase price and obligation for the new vessel. To the extent a further response is required, the averment is denied.

139.    Denied and strict proof demanded.

140.     Denied and strict proof demanded

141.    Denied and strict proof demanded. Damages are expressly denied.

142.    Denied and strict proof demanded. Damages are expressly denied, and punitive damages are inappropriate when the actions were taken on advice of counsel.

## COUNT TWO

143.    In response to Paragraph 143, Mr Amory incorporates his responses *supra* to the previous paragraphs of the Complaint and the allegations contained therein.

144.    Count Two, paragraphs 143 through 155, is not alleged as to Mr. Amory, personally, and therefore is denied in its entirety and strict proof demanded of the facts, circumstances, and legal effectivity of the claims. To the extent damages are asserted, they are disputed and without a basis for recovery against Mr. Amory.

## COUNT THREE

156.     In response to Paragraph 156,  Mr. Amory incorporates his responses *supra* to the previous paragraphs of the Complaint and the allegations contained therein.

157.    Denied as stated. Mr. Amory disputes the plaintiff's factual support and legal interpretation of duty and the breach of that duty as owed individually to BSLLC and QALLC.

158.    Denied as stated. Further, the flawed conclusions of law regarding corporate formalities and duty under Virginia authority is improper and without support in the controlling documents.

159.    Denied as stated. Further, the flawed conclusions of law regarding corporate formalities and duty under Virginia authority is improper and without support in the controlling documents.

160.    Denied.

161.    Denied.

162.    Denied.

163.    Denied.

164.    Denied.

165.    Denied.

166.    Denied.

167.    Denied.

168.    Denied.

169.    Denied.

170.    Denied.

171.    Denied.

172.    Denied as stated and ignores the (in)actions of Mr. Dwyer as a member of the entities.

173.    Denied as to the facts averred, calculation of damages and legal responsibility for the actions claimed.

174.    Denied as stated as the relief is available to the plaintiff upon inquiry. Further, a review by an independent accountant has been undertaken, with results available to all members.


## **COUNT FOUR**

175.     In response to Paragraph 175,  Mr. Amory incorporates his responses *supra* to the previous paragraphs of the Complaint and the allegations contained therein.

176.     Denied as the derivative action is improperly before this Honorable Court.

177.     Denied.

178.     Denied.

179.     Denied. Mr. Amory suggests an independent manager or receiver be appointed to liquidate the entities and wind up the business affairs for the benefit of the members as the proper remedy.

180.     The requested relief is both unsupported and inappropriate, and therefore denied.

## COUNT FIVE

181.     In response to Paragraph 181,  Mr. Amory incorporates his responses *supra* to the previous paragraphs of the Complaint and the allegations contained therein

182.      Count Five, paragraphs 181 through 189, is not alleged as to Mr. Amory, personally, and therefor is denied and strict proof demanded of the facts, circumstances, and legal effectivity of the claims. To the extent damages are asserted, they are disputed and without a basis for recovery against Mr. Amory.

## COUNT SIX

190.     In response to Paragraph 190,  Mr. Amory incorporates his responses *supra* to the previous paragraphs of the Complaint and the allegations contained therein.

191.     Denied.

192.     Denied.

193.     Denied.

194.     Admitted.

195.    Denied as stated as the relief is available to the plaintiff upon inquiry. Further, a review by an independent accountant has been undertaken, with results available to all members.

196.    Denied as to relief requested is responsibility of Defendant.

197.    Any allegation, averment or assertion not specifically or completely admitted is denied and strict proof demanded thereof.

**Defendant C. Meade Amory states the following affirmative and other defenses without assuming the burden of proof that would otherwise rest with the plaintiff**:

198.    The defendant avers the claims in the plaintiff's complaint fail to state a plausible claim in light of the material facts contained within pleading and should be dismissed with prejudice.

199.    The defendant's actions as an officer of LDA are separate and distinct from his role as a member-manager of the instant entities. Virginia authority recognizes this distinction and allows limited liability companies to have outside transactions with other entities.

200.    The actions of the co-defendants are separate and distinct from the actions of Mr. Amory in his personal capacity. The LDA interests in securing its due funds form the advancements is not a violation of duty by Mr. Amory.

201.    The actions of Mr. Amory were, at all times, with the within the BSLLC and QALLC agreements and supporting accounts as well as Virginia authority.

202.    Further, the BSLLC and QALLC operating agreements indemnified the actions of Mr. Amory with respect to the operation of the entities.

203.    The defendant's actions were with the authority granted by Virginia Code §13.1-1000 et seq.

204.    The defendant utilized "good faith business judgment" as all times specified herein as required under Virginia Code §13.1-1047.

205.    The defendant has a complete defense of all claims and assertions as pled.

206.    Plaintiff's recovery may be time-barred; in part or *in toto*, under law and/or in equity upon further discovery and review.

207.    Plaintiff's claims have been waived and/or are estopped, in whole or in part, by his inactions, actions and participation in the foundational events and bar to the operations of the vessels and income to BSLLC and QALLC, resulting in the instant dispute.

208.    Plaintiff's claims are barred or diminished by the defendant's rights of offset, setoff, and recoupment.

209.    The plaintiff has failed to mitigate his damages, and in fact by his explicit actions has exacerbated the amount of the losses and obligations as asserted.

210.    The defendant reserves the right to plead further defenses and claims as the discovery progresses in the instant matters.

211.    This instant matter is requested to be tried by Jury pursuant to Rule 38 of *the Federal Rules of Civil Procedure*.  The right to a jury trial in this matter is proper under the applicable state court authority notwithstanding the pendant jurisdiction of this Honorable Court

**WHEREFORE**, your defendant, C. Meade Amory having fully responded to the plaintiff's Complaint, respectfully requests:

A.    That the Court enter judgment in favor of the defendants and against the plaintiff on the claims asserted in the Complaint and deny all relief sought therein;

B.    That the court award the defendant its costs, including reasonable attorney's fees, incurred in connection with this action; and

C.      This Honorable Court award such other and further relief as deemed just and proper.

## COUNTERCLAIM

COMES NOW the defendant, C. Mead Amory, by counsel, and asserts the following *Counterclaim* against plaintiff Troy D. Dwyer, derivatively on behalf of Bella Sky, LLC and Quinby Allie, LLC., and individually, stating as follows.

1.      The instant compulsory counterclaim arises from the same transactions and occurrences that are the foundation for the plaintiff's assertions raised *supra* and does not require third-parties unrelated to the matters at bar.

2.      Mr. Amory incorporates the facts, circumstances, and defenses of their responses to the Plaintiff's assertions *supra* in their counterclaims,

3.      Bella Sky, LLC (hereinafter "BSLLC") is a Virginia limited liability company formed and operating under Virginia authority.

4.      Quinby Allie, LLC (hereinafter "QALLC") is a Virginia limited liability company formed and operating under Virginia authority.

5.      Mr. Amory and Mr. Dwyer are the sole members of the entities with equal (50%) membership interests and varied capital account interests.

6.      Mr. Dwyer has invested no meaningful capital to either entity.

7.      As evidenced by Mr. Dwyer's pleadings, *supra*, the members are at an impasse, making self-resolution under the operating agreement highly implausible.

8.      Mr. Dwyer's actions also make notice and related internal remedies moot.

9.      Upon information and belief, Mr. Dwyer is not willing, not able, to resolve the outstanding issues and resume operation to the business entities under terms fair to Mr. Amory or as directed by the operation agreements.

10.      The action of Mr. Dwyer and caused the acceleration and default of the financing of the entities via BB&T Bank. (Notices attached as ***Exhibit A***).

11.      The entities have certain funds due on account to L. D. Amory Company Incorporated that are due and payable. (Attached as ***Exhibit B***).

12.      Part of the debt obligation represent the negative amounts due from a subsequent vessel's operation by the members. This obligation was part of the purchase price paid for the present vessel. (***Exhibit C*** attached).

13.      During the relationship of the parties, Mr. Dwyer had become more overbearing and less cooperative as the operational profitability of the fishing vessels came under scrutiny.

14.      Mr. Dwyer refused to account for certain expenditures and drew an unsupported salary while the vessels were inoperable, but during which time he received personal income as well, to the detriment to the entries, by working for others.

15.      These actions created large shortfalls to the entities and made profitability impossible.   Further, these actions are in violation of the duties to the entities and fair dealing.

16.      The entities hold both specialized and highly valuable fishing permits and quotas, in addition to the ownership of the vessels. The true value is in the ability to operate under the permits rather than the replacement costs of the hard depreciable assets.

17.      Upon information and belief, Mr. Dwyer's actions to impede the profitability of the entities is due, in part, to his desire to become the sole member and control the assets held by the entities.

18.     Upon information and belief, Mr. Dwyer seeks to obtain the membership interests of Mr. Amory without the agreed payment of the funds advanced by LDA, or at a fair market value for the assets.

19.     The usurpation of control over the entities is to facilitate a "below market" transfer of the assets for the benefit of Mr. Dwyer in violation of Virginia law and policy.

20.     Mr. Amory requests an independent manager or conservator be appointed to determine the value of the assets held and the proper amounts due to LDA and other creditors.

21.     Mr. Amory requests an independent accountant, manager or conservator be appointed pursuant to Virginia Code §13.1-1046 et. seq. to determine the value of the members' capital accounts to facilitate the dissolution of the entities and final payout to LDA, other creditors and to the members.

22.     Mr. Amory requests the entities be dissolved and assets liquidated under Virginia authority at the best and highest market value of all assets – tangible and intangible.

**WHEREFORE**, your defendant and counterclaim-plaintiff, C. Meade Amory, individually and derivatively, respectfully requests:

A.     That the Court exonerate Mr. Amory for the claims against him individually and derivatively by Mr. Dwyer;

B.     That the Court enter judgment in favor of Mr. Amory and against Mr. Dwyer,  for the claims asserted in the Counterclaim;

C.     That Mr. Dwyer be removed from management authority for the entities, generally disassociated as a member, and appoint the applicable independent person(s) to determine the value, existing obligations, and to market and dispose of the assets at full value;

D.      That the businesses properly wind up their respective affairs and distribute the residual amounts to the members in accordance with their capital accounts;

D.      That the court award Mr. Amory his costs, including reasonable attorney's fees, incurred in connection with this action; and

E.      This Honorable Court award such other and further relief as deemed just and proper.

Dated: February 23, 2023                        Respectfully submitted,
                                                C. Meade Amory
                                                By: /s/ *Nicholas R. Hobbs*

Michael B. Ware, Esq.; VSB No.: 25401
Nicholas R. Hobbs.; VSB No.: 71083
SCHEMPF & WARE, PLLC
4000 George Washington Memorial Highway
Yorktown, VA  23692-2724
(757) 240-4000  Telephone
(757) 240-4001  Facsimile
Email: mware@4000law.com
Email: nhobbs@4000law.com
*Counsel for individual co-defendant C. Meade Amory*

**CERTIFICATE OF SERVICE**

I hereby certify that on the twenty-third day of February, 2023, I will electronically file

the foregoing pleading with the Clerk of the Court using CM/ECF system, which will send

notification of such filing to the following CM/ECF participant(s):

James L. Chapman, IV, Esq.
Crenshaw Ware & Martin, PLC
150 West Main Street, Ste 1500
Norfolk, Virginia 23510
Telephone: 757-623-3000
Facsimile: 757-623-5735
Email: jchapman@cwmm-law.com
Counsel for L.D. Amory and Company,
And Quinby J. Amory

Mary Elisa Reeves (admitted Pro hac vice)
Reeves McEwing, LLP
1004 S. Front Street
Philadelphia, PA 19147
Telephone: 267-324-3773
Facsimile: 267-519-9463
Email: reeves@lawofsea.com
Co-Counsel for LD. Amory and Co., Inc.
and Quinby J. Amory

Julia A. Rust, Esq. (VSB No. 87270)
Pierce Mccoy, PLLC
101 West Main Street, Suite 101
Norfolk, Virginia 23510
Telephone: 757-216-0226
Facsimile: 757-257-0387
Email: julia@piercemccoy.com
Counsel for Troy D. Dwyer

Kirby L. Aarsheim
Farrell Smith O'Connell Aarsheim
Aprans, LLP
27 Congress Street, Ste 109
Salem, MA 01970
Telephone: 978-744-8918
Facsimile: 978-666-0383
Email: 5aarsheim@fsofirm.com
Counsel for Troy D. Dwyer, derivatively on
behalf of Bella Sky, LLC and Quinby Allie,
LLC, and Individually

By_____/s/_____
Nicholas R. Hobbs, Esq., VSB #71083
**SCHEMPF & WARE, PLLC**
4000 George Washington Memorial Highway
Yorktown, VA  23692
(757) 240-4000 – Telephone
(757) 240-4001 – Facsimile
Email address:  nhobbs@4000law.com
*Counsel for Defendant*